[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2006
THOMAS K. KAHN
CLERK

No. 05-16537
Non-Argument Calendar
_____

D. C. Docket No. 04-00254-CR-01-CC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARSENIO RAMIREZ SANTACRUZ,
a.k.a. Guero,
a.k.a. Jorge Israel Cabrera,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(June 8, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Arsenio Ramirez Santacruz appeals his 235-month sentence, which was

imposed after he pled guilty to conspiring to possess with intent to distribute

cocaine and marijuana, in violation of 21 U.S.C. §§ 846, 841 (b)(1)(A)(ii), (vii) and (viii). On appeal, Santacruz argues that his sentence was unreasonable in light of United States v. Booker, 543 U.S. 220 (2005), and the factors enumerated in 18 U.S.C. § 3553(a).[1] We affirm.

After Booker, a district court, in determining a reasonable sentence, must consider the correctly calculated sentencing range under the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). We review a district court's interpretation of the Guidelines de novo and its factual findings for clear error. See United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). "In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Thomas, --- F.3d ---, 2006 WL 1081105, at *1 (11th Cir. Apr. 26, 2006) (citing

---

[1]Santacruz also claims that he received ineffective assistance of counsel at the change-of-plea and sentencing hearings. These claims were not addressed by the district court. We generally will not consider on direct appeal claims of ineffective assistance of counsel if the district court neither entertained the claims, nor developed a factual record. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). In the instant case, the record is insufficiently developed to consider Santacruz's ineffective-assistance claims. Accordingly, we decline to review them and dismiss the appeal as to those claims. Our dismissal is without prejudice. Cf. Massaro v. United States, 538 U.S. 500, 509 (2003) ("We . . . hold that failure to raise an ineffective-assistance- of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."); United States v. Khoury, 901 F.2d 948, 974 (11th Cir.) (dismissing ineffective-assistance-of-counsel claim brought on direct appeal without prejudice to pursue on collateral relief), modified on other grounds, 910 F.2d 713 (11th Cir. 1990)).

United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) ("We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness.")). Our review for reasonableness is "deferential" and focuses on whether the sentence imposed achieves the purposes of sentencing as stated in § 3553(a). Talley, 431 F.3d at 788.

The relevant facts are straightforward. On June 1, 2004, Santacruz and 15 co-defendants were charged in a 10-count superseding indictment in which Santacruz was charged with: (1) conspiring to possess with intent to distribute at least five kilograms of cocaine and at least 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii) and (viii) ("Count 1"); (2) possessing with intent to distribute at least five kilograms of cocaine, in violation of § 841(a) and (b)(1)(A)(ii) ("Count 8"); (3) conspiring to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of §§ 846 and 841(b)(1)(A)(vii) ("Count 9"); and (4) possessing with intent to distribute at least 1,000 kilograms of marijuana, in violation of § 841(a) and (b)(1)(A)(vii) ("Count 10"). Santacruz pled guilty to the part of Count 1 charging him with conspiracy to possess with intent to distribute at least five kilograms of cocaine and to Count 9.

3

Pursuant to the government's request, the district court dismissed Counts 8 and 10. Santacruz then proceeded to sentencing.

According to the Presentence Investigation Report ("PSI"), beginning as early as September 2002 and continuing through May 2004, the Drug Enforcement Agency ("DEA") conducted an investigation of Santacruz and numerous other members of a narcotics-trafficking organization which was importing cocaine, methamphetamine, and marijuana from Mexico for distribution in the Atlanta, Georgia area. The investigation began as a series of undercover purchases of cocaine and methamphetamine from street-level sellers. In order to investigate the more senior members of the organization, the DEA then used court-approved wiretaps, pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq.

The wiretap investigation revealed that Santacruz was one of the organization's supervisors or managers in the Atlanta area, and that he was responsible for coordinating the receipt of cocaine shipments from Mexico and the distribution of the drugs in the Atlanta area. Santacruz's involvement in the organization was revealed during the intercept of a June 23, 2003 phone call between Juan Martinez, who previously was identified as an organization member and whose phone the DEA was monitoring, and a caller who identified himself as

"Guero's [Santacruz's] friend" and indicated he was calling on behalf of Santacruz. Previous intercepted phone calls had revealed that Martinez held a higher position than others in the organization and had supervisory authority for distribution of larger loads of smuggled drugs once they reached Atlanta. The investigating agents learned, during the June 23, 2003 intercepted call, that Santacruz was Martinez's source for cocaine and methamphetamine and was a supervisor in the drug distribution in Atlanta. During the June 23, 2003 conversation, the unidentified caller, who had indicated he represented Santacruz, said he was calling to advise Martinez that a 50-kilogram shipment of cocaine from Mexico had been held up at the Mexican border but would arrive in Atlanta a few days later.

During the following month, the DEA intercepted calls related to drug-trafficking and involving Santacruz on an almost a daily basis. Santacruz's coordination efforts for the organization during this time period included: (1) on July 12, 2003, Martinez and Santacruz discussed the sale of five kilograms of cocaine; (2) on July 15, 2004, a conversation between Martinez and an organization member in Mexico revealed that the cartel had sent Santacruz and Martinez nine kilograms of cocaine; (3) on July 18, 2003, Santacruz called a contact in Mexico and reported that he had delivered money to a courier, in an

5

amount that corresponded to a 4.5 kilogram sale of cocaine; (4) on August 27 or 28, 2003, Santacruz negotiated the sale of a pound of ice methamphetamine; and (5) on September 2 and 3, 2003, Santacruz coordinated the sale of 100 kilograms of cocaine to Randy Middlebrooks.

After September 2003, Santacruz returned to Mexico and did not appear again in Atlanta until March 2004. The DEA then resumed interception of Santacruz's telephone calls and, in May 2004, seized 3,195 pounds of marijuana that had been delivered to Santacruz and resulted in his arrest.

The PSI calculated a base offense level of 38, pursuant to U.S.S.G. § 2D1.2(c)(1), based on Santacruz's responsibility for a total marijuana equivalent of over 30,000 kilograms. The PSI recommended a 3-level enhancement, pursuant to U.S.S.G. § 3B1.1(b), for Santacruz's role in the offense as a manager or supervisor, and a 3-level decrease in Santacruz's offense level, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility because he pled guilty and stated contrition for his actions. Santacruz faced a mandatory minimum term of 10 years' imprisonment, a maximum term of life, and, with an adjusted offense level of 38 and a criminal history category I, an advisory Guidelines range of 235 to 293 months' imprisonment.

Santacruz objected to his being held accountable for the 50 kilograms of cocaine seized on June 23, 2003 and to the enhancement for his supervisory role in the offense. He also requested the district court to award him safety-valve relief, if it determined the role enhancement was inapplicable. The government objected to the PSI, arguing that Santacruz should receive a 4-level enhancement for being a leader of the conspiracy, rather than just a 3-level enhancement based on being a manager or supervisor.

At the sentencing hearing, the district court overruled Santacruz's and the government's objections to the offense-level calculations and, prior to imposing sentence, heard Santacruz's mitigating evidence and arguments. Santacruz highlighted that he had no prior criminal history and explained his personal history as follows. He was abandoned by his parents when he was two months' old and then was raised by his grandparents. He dropped out of school at age seven and began to work. After marrying and having two children, Santacruz opened a small convenience store in Mexico, which he operated from 1994 to 1999. He and his wife then moved to the United States in 1999 and eventually to the Atlanta area, where he became involved in drug trafficking in 2002. He first started using cocaine, marijuana, and alcohol at age 15 and was addicted to all of these

substances when he was arrested. Santacruz urged the court to sentence him at the low-end of the Guidelines range -- 235 months' imprisonment.

After considering the foregoing evidence and argument, the court imposed a low-end sentence of 235 months' imprisonment, followed by five years of supervised release. In imposing sentence, the court stated that it was aware that the Guidelines were advisory, and that it chose "to impose a sentence pursuant to the guidelines because the guideline range was appropriate and did embrace this enterprise of which [Santacruz] was a part." This appeal followed.

Santacruz argues that his sentence was unreasonable because the court failed to consider adequately the following facts: (1) his history of poverty and drug addiction; (2) the fact that he is a husband and father; (3) whether a shorter sentence would have served the 18 U.S.C. § 3553(a) purposes; and (4) the need to avoid unwarranted sentence disparities between the excessive sentence he received and the sentences his codefendants received. Santacruz argues that the court imposed a grossly uneven and unjust sentence by relying almost solely on the PSI's recommendations and not according proper weight to the mitigating circumstances he outlined at the sentencing hearing. We disagree.

In determining whether a sentence is reasonable, we are guided by the factors as set forth in 18 U.S.C. § 3553(a). Booker, 543 U.S. at 261; Winingear, 422 F.3d at 1246. These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). "Although sentencing courts must be guided by these factors, 'nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.'" Thomas, 2006 WL 1081105, at *7 (quoting United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005)); see also United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) (stating that, post-Booker, district courts

9

need not conduct an accounting of every § 3553(a) factor and expound on how each factor played a role in the sentencing decision).

On this record, Santacruz's sentence was reasonable as reflected by the district court's consideration of the Guidelines range and the § 3553(a) factors and the court's acknowledgment that the Guidelines range was advisory. The district court considered the serious nature and circumstances of Santacruz's offense when it found that Santacruz acted as a manager or supervisor, rather than as a leader, and was responsible for the quantity of drugs listed in the PSI. See 18 U.S.C. § 3553(a)(2) (discussing factors pertaining to "the need for the sentence imposed," including "the seriousness of the offense"). It also heard Santacruz's mitigating evidence concerning his childhood and other personal history and characteristics. Id. at § 3553(a)(1). Moreover, "[t]he parties' arguments and the PSI's calculations outlined 'the kinds of sentences available.'" Thomas, 2006 WL 1081105, at *7 (quoting 18 U.S.C. § 3553(a)(3)).

As for Santacruz's argument concerning sentencing disparities among defendants, 18 U.S.C. § 3553(a)(6), we are hard-pressed to conclude that sentencing a manager or supervisor in the conspiracy, who was responsible for coordinating the receipt of drugs from Mexico and the distribution in Atlanta, was unreasonable. Cf. Thomas, 2006 WL 1081105, at *8 (stating that longer sentence

10

imposed on organizer or leader of conspiracy, who engaged in coordination efforts of conspiracy to obstruct, delay, or affect commerce by robbery "was well within the bounds of reasonableness"). Finally, Santacruz faced a statutory maximum term of life imprisonment, but received a sentence at the lowest end of the advisory Guidelines range. Cf. Talley, 431 F.3d at 787 (observing that although a sentence within the advisory Guidelines range is not per se reasonable, we ordinarily expect such a sentence to be reasonable).

Although Santacruz disagrees with the district court's assessment of several of the § 3553(a) factors, on this record, we cannot say that Santacruz met his burden to show that the district court's consideration of the § 3553(a) factors, or the ultimate sentence imposed, was unreasonable.

**AFFIRMED.**