[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10771
Non-Argument Calendar

_____

D. C. Docket No. 04-00265-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE EDWARD HILL,
a.k.a. Willie Hill,
a.k.a. Ed Hill,
a.k.a. Edd Hill,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 9, 2008)

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Willie Hill appeals the district court's order revoking his supervised release and sentencing him to 24 months' imprisonment, 10 months above the advisory guideline range. At the revocation hearing, Gwendolyn Miller, a nurse at College Park Healthcare Center (CPHC), where Hill was enrolled in a residential drug treatment program, testified that Hill grabbed her shirt in an offensive manner, and a fellow CPHC resident, Jerry Porter, testified that Hill struck him without provocation. Hill asserts that the evidence that he committed the violations was "marked by inadequacy, inconsistency, and bias" and, therefore, was insufficient to sustain the revocation of his supervised release. Next, Hill argues that his sentence was unreasonable, noting that his sentence exceeded by ten months the guideline range for his violation, and reasserting that the evidence was insufficient to establish the violations. First, because the district court was entitled to credit the testimony of Miller, a nurse at the residential healthcare center where Hill was enrolled in a drug treatment program, and Porter, a fellow resident at the center, the district court did not clearly err in finding that Hill had committed two acts of battery, in violation of his supervised release. Second, because the district court specifically considered Hill's criminal history, as well as prior allegations that he

2

had violated his supervised release, the court did not abuse its discretion in imposing an above-guidelines sentence. Therefore, we AFFIRM.

## I. BACKGROUND

In May of 2006, Hill was convicted of six counts of distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851. R1-46. He was sentenced to 36 months' imprisonment, which constituted an upward departure from his guideline sentencing range of 24-30 months' imprisonment, and 6 years' supervised release. Id.; R6 at 3, 9. The conditions of Hill's supervised release included that he refrain from committing another crime and that he submit to random drug and alcohol testing. R1-46 at 3. In August of 2007, following Hill's release from prison, a U.S. Probation Officer (USPO) petitioned the district court for revocation of Hill's supervised release because he had tested positive for the use of cocaine. R2-63. This petition was withdrawn after the College Park Healthcare Center (CPHC) agreed to accept Hill into a residential program. R7 at 58. In December 2007, the USPO once again petitioned the court to revoke Hill's supervised release, this time alleging that he had committed new criminal conduct by (1) inappropriately touching a female nursing assistant, and (2) striking another resident in the mouth, causing him to be hospitalized. Record Excerpts at Doc. R2-64.

3

At the revocation hearing, Hill denied the violations.  R7 at 2.  The government informed the court that it believed that Hill's conduct constituted a grade C violation, which would result in a guideline range of 8-14 months' imprisonment if his supervised release were revoked.  Id. at 3. Hill did not contest this assertion.  Gwendolyn Miller, a certified nursing assistant employed by CPHC, testified that, while she was working, Hill pushed James Clemmons,[1] another resident, up to her, and Hill pulled up her shirt while Clemmons pulled down her pants.  Id. at 5-7.  On cross-examination, Miller stated that she had been facing a kiosk against a wall when Hill and Clemmons approached her from her right side, and Hill "pulled [her] shirt down at the top," but she did not report the incident until the next day.  Id. at 13-17.  Hill was behind Clemmons's wheelchair when the incident occurred.  Id. at 14-15.  She stated that she had not experienced previous problems with Hill, though she had complained of inappropriate remarks by Clemmons.  Id. at 9-10.

Jerry Porter, a CPHC resident, testified that one day, while he and Hill were playing cards for money, he thought that Hill was cheating, and when he reached to take his money, Hill hit him twice in the mouth, which required him to visit the hospital.  Id. at 18-20.  On cross-examination, Porter stated that, after Hill hit him,

_____

[1]Clemmons was initially identified as "Clemson," however, in the remainder of the hearing and record he is referred to as Clemmons.

he threw a pole at Hill, but missed, and he acknowledged that, if it was determined that he started the fight, he could be removed from the nursing home, which he did not want to happen because he needed medical care. Id. at 25-28.

Deek Cateau, an administrator at CPHC, testified that he had received reports of the two incidents. Id. at 29, 32. The first report documented Miller's statements to Cateau that Hill and another resident cornered her in the hallway, and Hill held her while the other resident pulled down her pants. Id. at 32. The second report stated that two residents were involved in a fight, and through investigation of this report, Cateau discovered that Hill was one of the residents involved in the fight and the other resident required medical attention. Id. at 32-33. Defense witness Brenda Lewis, a staff investigator for the Federal Defender Program, testified that she interviewed Clemmons, who told her that he and Hill had not planned to do anything to the nurse, and he had grabbed the nurse's pants and accidentally pulled them down. Id. at 37-39. On cross-examination, Lewis acknowledged that the resident had told her that he was "playing" with the nurse, and he could not remember the extent of Hill's involvement. Id. at 43-44.

The government argued that credible testimony and evidence established that Hill committed the violations and asserted that Hill's lengthy criminal history and continued disobedience to rules and orders demonstrated the need for the court

to impose the maximum term, i.e. 36 months' imprisonment. Id. at 47-49. Hill argued that the evidence did not establish that he had committed any violation of his supervised release, in that, with regard to the first incident, Miller's testimony established that Clemmons, and not Hill, pulled down Miller's pants, and Hill was separated from Miller by Clemmons's wheelchair. Id. at 49. He also noted Clemmons's statement to the investigator that he had not coordinated with Hill an effort to expose Miller, which he argued was consistent with Miller's statement that she had not previously experienced problems with Hill. Id. at 50. With regard to the second incident, he argued that there was no unbiased testimony establishing that Hill, rather than Porter, who was angry over the card game, initiated the altercation. Id. at 51. He also noted that Porter did not require any stitches or treatment for the injury to his mouth. Id. Hill asked that, if the court decided to revoke his supervised release, he be sentenced within the guideline range of 8-14 months for his violation, noting that he had a very low intelligence as well as numerous mental disorders, and the alleged violations were misdemeanors at most. Id. at 52-55.

The court found that Miller's and Porter's testimony was credible and, based on that testimony, found that Hill had violated the terms of his supervised release by committing new criminal conduct. Id. at 57. The court stated that the purpose

of revocation of supervised release was to protect others and to punish for failure to follow rules. Id. The court sentenced Hill to 24 months' imprisonment, noting that it was imposing an above-guideline sentence because Hill had been previously found in violation of his supervised release for cocaine usage, but was released to the nursing home, and his criminal record was "as lengthy as any" the court had seen. Id. at 58-59. Hill's actions illustrated that supervised release had not been beneficial. Id. at 58. Hill noted that he objected to the finding that he had violated his supervised release, as well as to the length of the sentence imposed. Id. at 61.

## II. DISCUSSION

**A.** **Whether the district court clearly erred in its finding that Hill violated the terms of his supervised release**

On appeal, Hill asserts that the evidence that he committed the violations was "marked by inadequacy, inconsistency, and bias" and, therefore, was insufficient to sustain the revocation of his supervised release. Appellant's Brief at 12. Regarding the first violation, he argues that the evidence was insufficient to show that he inappropriately touched Miller, noting that: (a) Miller testified that she had not had previous difficulties with Hill, while she had noted prior inappropriate behavior from Clemmons; (b) Miller initially stated that Hill raised her shirt, but later stated that "her shirt was not raised;" and (c) Clemmons stated that Hill had not participated in any attempt to touch Miller and did not make clear

7

whether Hill had touched Miller at all.  Id. at 13-15.  Moreover, he asserts that, even assuming that he touched Miller, the record does not demonstrate that the touch constituted a battery under Georgia law, as Miller was not physically harmed and Hill's alleged touch was not "objectively insulting or provoking."  Id. at 14-15. Regarding the second incident, Hill argues that Porter, because he could be removed from the nursing home if he were to be implicated in causing a fight, was not a credible witness to establish that Hill had been the aggressor in their altercation.  Id. at 15-16.

We review for an abuse of discretion the district court's decision to revoke supervised release.  United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994). The district court's findings of fact made at the revocation proceeding are binding and will not be overturned unless they are clearly erroneous.  United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).  We cannot find clear error unless we are "left with a definite and firm conviction that a mistake has been committed." United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation omitted).  Moreover, "[t]he credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility."  United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). "Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance

8

of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release" and require the defendant to serve prison time instead of supervised release. United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006).

The district court did not clearly err in finding the facts that formed the basis of the revocation of Hill's supervised release. With regard to the first incident, Morris testified that Hill grabbed her shirt in a manner that was unwanted and offensive, which, if deemed credible, was enough to establish that Hill had committed a battery against her. See R7 at 7-8. While Hill points to alleged inconsistencies in Morris's testimony, particularly as to whether Hill pulled Morris's shirt up or down, Morris's testimony was not inconsistent as to whether Hill touched her in an unwanted and offensive manner, and, in any case, the district court was entitled to determine that Morris was credible and to reject any inference to the contrary. See Copeland, 20 F.3d at 413. With regard to the second incident, again, while the district court could have declined to credit Porter's testimony based on his personal bias, the court was entitled to credit his testimony, and we will not disturb the district court's judgment in that respect. See id. Because the testimony of Morris and Porter was sufficient, if believed, to establish that Hill violated the terms of his supervised release, and because their testimony does not

contain any elements that would create a definite and firm conviction that they were not credible, we find no error with the revocation of Hill's supervised release. See Almand, 992 F.2d at 318.

**B.  Whether Hill's sentence was unreasonable**

Next, Hill argues that his sentence was unreasonable, noting that his sentence exceeded by ten months the guideline range for his violation, and reasserting that the evidence was insufficient to establish the violations.  He argues that the district court erred by considering an alleged prior positive drug test and arrest, allegations of which Hill was not put on notice, nor given a chance to contest.  He asserts that the district court placed too much weight on his criminal past, as the applicable guideline range, which was calculated with a criminal history category VI, already reflected the nature of his criminal record.  He contends that the court gave insufficient consideration to mitigating circumstances such as his old age, mental difficulties, and the fact that he has not recently been convicted of any violent crimes.

We review the sentence imposed upon the revocation of supervised release for reasonableness.  Sweeting, 437 F.3d at 1106-07.  "[R]easonableness" review "merely asks whether the trial court abused its discretion."  United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. ___

10

, ___ , 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007)).  "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable . . . ."  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (internal quotation omitted).

With respect to sentences imposed outside the applicable guideline range, the district court must "ensure that the justification is sufficiently compelling to support the degree of the variance," but extraordinary circumstances are not required to justify such a sentence.  Gall v. United States, 552 U.S. ___, ___, 128 S.Ct. 586, 595, 597, 169 L.Ed.2d 445 (2007).  We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Id. at ___, 128 S.Ct. at 597.

Section 3583 of Title 18 of the United States Code provides that a district court may revoke a term of supervised release and impose a sentence of imprisonment for the violation after considering factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7).  18 U.S.C. § 3583(e).  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the

11

defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range; (6) the pertinent policy statements of the Sentencing Commission; (7) the need to avoid unwanted sentencing disparities; and (8) the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court," and we will not remand for resentencing unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quotation and citation omitted). Chapter 7 of the United States Sentencing Guidelines provides guidance on the length of the sentence to be imposed after revocation, but Chapter 7 is not binding; the district court need only be aware of and consider its recommendations. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000). The district court may consider all relevant conduct, including conduct for which the offender was acquitted, in arriving at a reasonable sentence. United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005).

Hill has not demonstrated that his sentence was unreasonable. The district court specifically considered Hill's prior criminal record, which it determined was "as lengthy as any criminal record [it had] seen," a finding that Hill did not contest.

See R7 at 58-59. In addition, the court found that Hill was not amenable to successful supervised release, noting that he had been previously placed into nursing care following a petition to revoke his supervised release, a finding that Hill did not contest. See id. at 58. While Hill now argues that he was not given an opportunity to contest that the probation office had issued a prior petition for revocation of supervised release based on cocaine usage, the original petition for revocation of his supervised release, which contained the cocaine allegation, was in the record, and he did not attempt to contest that allegation, and, therefore, there was sufficient evidence for the court to find that the cocaine allegation was true, notwithstanding the fact that Hill was not formally charged with or convicted of that conduct. See Duncan, 400 F.3d at 1304. The district court was entitled to place great weight on Hill's criminal record, as well as on the fact that the probation office had previously petitioned for revocation of his supervised release, and to determine that those factors outweighed the countervailing factors that Hill asserted, and there is nothing in the record to leave us with the definite and firm conviction that the district court committed a clear error in judgment in its weighing of the factors and imposition of an above-guidelines sentence. See Clay, 483 F.3d at 743; see also Gall, 552 U.S. at ___, 128 S.Ct. at 597.

13

## III.  CONCLUSION

For the reasons stated above, we find no error in the district court's revocation of Hill's term of supervised release and the subsequent sentence imposed.   Accordingly, we **AFFIRM.**