[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14151

Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 26, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00975-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX ESTEBAN THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 26, 2006)**

Before DUBINA, HULL, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Felix Esteban Thomas appeals his 121-month sentence, which was imposed

after he pled guilty to conspiracy to obstruct, delay, and affect commerce by

robbery, in violation of 18 U.S.C. § 1951(a). On appeal, Thomas raises the

following claims: (1) the district court violated ex post facto and due process principles by sentencing him based on a retroactive application of the remedial opinion in United States v. Booker, 543 U.S. 220 (2005); (2) the district court violated the Fifth Amendment's Indictment Clause, Blakely v. Washington, 542 U.S. 296 (2004), and Booker, by enhancing his offense level based on facts that were not alleged in the indictment, found by a jury, or admitted by him; and (3) his 121-month sentence was not reasonable. After careful review, we affirm.

I.

We review de novo a defendant's claim that his sentence violated ex post facto principles. United States v. Abraham, 386 F.3d 1033, 1037 (11th Cir. 2004), cert. denied, 126 S. Ct. 417 (2005). A challenge to the application of the Sentencing Guidelines is a mixed question of law and fact. United States v. Anderson, 326 F.3d 1319, 1326 (11th Cir. 2003). We review the district court's findings of fact for clear error and its application of the Guidelines to those facts de novo. Id. In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors. See United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) ("We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for

2

reasonableness."); see also United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (holding that pre-Booker standards for reviewing application of the Sentencing Guidelines still apply post-Booker because the "reasonableness" standard applies to the ultimate sentence imposed, not application of individual guidelines). Our "[r]eview for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id.

## II.

The facts relevant to Thomas's sentencing claims are these. On October 25, 2001, Thomas and five others were indicted for (1) conspiracy to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); (2) conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (Count 2); and (3) two counts of conspiracy to carry a firearm during a drug trafficking crime and crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (o) and 18 U.S.C. § 2 (Counts 3 and 4). Three of Thomas's co-conspirators, Alexander Brazaban, Jorge Martin Pena, and Francisco Isaia Castillo, entered guilty pleas to some of the counts of the indictment. In December of 2002, Brazaban, who pled guilty to

3

Counts 1 and 3, received a sentence of 41 months' imprisonment.[1]  On May 21,

2002, Thomas and the two remaining co-conspirators, Miguel Berroa and

Ariasmendy Pilier, proceeded to a joint jury trial.

During trial, Detective Juan Sanchez, of the Miami-Dade County Police

Department, testified that while working in an undercover capacity, he learned of

Thomas's willingness to commit a home invasion robbery.  Detective Sanchez

testified that he planned to pose as a disgruntled drug courier and ask Thomas for

help in robbing the people he (Sanchez) claimed to work for.   Another undercover

officer gave Detective Sanchez's phone number to Thomas.  Detective Sanchez

and Thomas had numerous phone conversations and also met in person several

times.  During one of their meetings, Detective Sanchez relayed the situation to

Thomas and asked him if he was able commit the robbery and Thomas answered

affirmatively.

After they had discussed the logistics of the robbery, Thomas told Detective

Sanchez to provide the address of his next cocaine delivery and indicated that the

robbery would take place then.  Thomas said that he would recruit at least three or

four people to help him commit the robbery.  Detective Sanchez told Thomas that

---

[1]After the briefs were filed in the instant appeal, on February 27, 2006, Pena, who pled
guilty to Counts 2 and 4, was sentenced to 52 months' imprisonment, and Castillo, who pled
guilty to Counts 2, 4, and 5, was sentenced to 53 months' imprisonment.

4

he would be transporting a minimum of 25 kilograms of cocaine and at some point during their discussions, Thomas indicated he was aware that one kilogram of cocaine was worth $100,000. Thomas also said that he previously had committed a home invasion robbery and that he had tied up the victims. Detective Sanchez responded that he wanted to be tied up if everyone else was going to be tied up. During a later meeting, Thomas told Detective Sanchez that he had recruited four more people to assist in the robbery. Thomas explained that they were going to leave Sanchez tied up inside the house during the robbery. On the day of the planned robbery, Thomas and five co-conspirators met at a prearranged meeting place and proceeded to a warehouse where Detective Sanchez called Thomas and gave him the address for the robbery. The conspirators subsequently were arrested and four firearms were found in one of their vehicles.

Co-conspirator Castillo testified that Thomas discussed the robbery with him on three occasions, and that he accompanied Thomas to meet with Detective Sanchez on one occasion. On the day of the planned robbery, when the conspirators met, Thomas brought with him four guns that he said would be needed to commit the robbery. Castillo testified that he understood the plan was to steal approximately 25 kilograms of cocaine.

5

The jury acquitted Thomas of one of the firearms charges (Count 4) but could not reach a verdict on the remaining counts, and the district court declared a mistrial as to those counts. Co-defendants Berroa and Pilier were acquitted of Counts 2, 3, and 4 and the district court declared a mistrial on Count 1. Berroa, Pilier, and Thomas subsequently pled guilty to Count 1 of the indictment. The district court waived the requirement of a presentence investigation report ("PSI") as to Berroa and sentenced him to time served and a 2-year term of supervised release. In exchange for Thomas's plea as to Count 1, the government agreed to dismiss Counts 2 and 3.

During Thomas's plea colloquy, he stated that he understood that the maximum statutory sentence on Count 1 was 20 years' imprisonment, and that the district court would determine the appropriate punishment pursuant to the advisory Sentencing Guidelines. Thomas also stated that the facts in the proffer he signed were correct. The factual proffer stated, among other things, that in September and October 2001, Thomas conspired with his co-defendants to commit a robbery of cocaine. Thomas had been contacted by an undercover law enforcement officer named "Juan," who was posing as a person working for Colombian cocaine traffickers. Thomas agreed to follow Juan during one of his cocaine deliveries to the Colombians. Thomas and his co-defendants planned to enter the residence and

6

take the cocaine by threat or force. Thomas and his co-defendants went to a location where they were supposed to wait for Juan to call them and tell them the location of the delivery. Each of them was ready and willing to commit the robbery. At the meeting place, where the conspirators were arrested, law enforcement found four firearms in a bag located in the car with two of the conspirators. After the district court accepted Thomas's guilty plea, he proceeded to sentencing.

The PSI calculated a base offense level of 20, pursuant to the guideline for robbery, U.S.S.G. § 2B3.1(a), and recommended the following adjustments: (1) a 5-level increase pursuant to § 2B3.1(b)(2)(C) because a firearm was brandished or possessed; (2) a 2-level increase pursuant to § 2B3.1(b)(4)(B) because a person was physically restrained; (3) a 1-level increase pursuant to § 2B3.1(b)(6) because a controlled substance was the object of the offense; (4) a 3-level increase pursuant to § 2B3.1(b)(7)(D) because the loss amount was more than $250,000, but not more than $800,000; and (4) a 4-level increase pursuant to § 3B1.1(a) because Thomas was an organizer or leader in the criminal activity. After a 2-level decrease for Thomas's acceptance of responsibility, his adjusted offense level was 33. With a criminal history category I, Thomas faced a Guidelines range of 135 to 168 months' imprisonment.

Thomas filed two sentencing objections, both of which related to Blakely or Booker or both. He asserted that the application of Booker's remedial holding to render the Guidelines range advisory in his case violated ex post facto principles. He argued that because the Guidelines were not advisory when he committed the crime, they could not be applied as advisory to his disadvantage. Instead, Thomas urged that the pre-Booker mandatory regime, as constrained by Blakely, controlled and required the facts supporting the enhancements in the PSI to be charged in the indictment and proven to a jury or agreed to by him. He also objected to every enhancement applied to his base offense level under Blakely and Booker because the facts supporting the enhancements were not found by a jury or stipulated to in the plea proceedings. Finally, Thomas urged that in determining his sentence, the district court should consider that he faced deportation following his incarceration and therefore was less of a threat to people in the United States. Thomas also highlighted that co-defendant Berroa was sentenced to time served after being incarcerated for about 41 months, and co-defendant Brazaban had received a 41-month sentence.

During the sentencing hearing, the court overruled all of Thomas's objections. At the government's request, the court granted Thomas a 3-level reduction for acceptance of responsibility, rather than the 2-level reduction

8

recommended in the PSI, thereby giving him an adjusted offense level of 32 and a corresponding Guidelines range of 121 to 151 months. The district court then considered mitigating circumstances, including that Thomas was sorry for his conduct and was going to be deported after serving his prison sentence. Finally, the district court stated that it had considered the PSI, the advisory Guidelines range, and the factors in 18 U.S.C. § 3553(a), and that a sentence at the low end of the advisory range was appropriate and would adequately address the serious nature of the offense. The court then imposed a 121-month jail sentence to be followed by three years' supervised release. This appeal followed.

III.

First, Thomas argues that although the Booker constitutional holding must be applied retroactively to his case, the district court's application of the Booker statutory or remedial holding, which rendered the Guidelines advisory, violated ex post facto principles and his due process right to "fair warning" under Bouie v. City of Columbia, 378 U.S. 347, 353 (1964) (holding that judicial enlargement of a criminal statute, applied retroactively, violated the Due Process Clause because it was unforeseeable and like an ex post facto law). In support of this novel argument, he states that under the mandatory sentencing regime in place at the time of his crime, the maximum penalty he could receive, consistent with the Sixth

9

Amendment, was the sentence authorized only by the facts charged in the indictment. He urges us to apply the sentencing laws in effect at the time of his crimes with, what he terms, "the Blakely gloss."

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The facts must also be charged in the indictment. Id. at 476. After Thomas's first trial, but prior to his guilty plea, the Supreme Court decided both Blakely and Booker. In Blakely, the Supreme Court revisited the Apprendi rule in the context of Washington state's sentencing guideline scheme, and clarified that the relevant "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis and internal quotation marks omitted).

In Booker, the Supreme Court applied its holding in Blakely to the Federal Sentencing Guidelines. After Booker, "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398

10

F.3d 1291, 1298 (11th Cir.) (emphasis omitted) (citing Booker, 543 U.S. at 231-45), cert. denied, 125 S. Ct. 2935 (2005).  As a remedy, in Booker, the Court rendered the Guidelines "effectively advisory" by excising 18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range).  See 543 U.S. at 259.  The Court explained that "[w]ithout the 'mandatory' provision, the [Sentencing Reform] Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals."  Id. at 259.  The Court also instructed that the remedy was to be applied "to all cases on direct review."  Id. at 268.

In United States v. Duncan, 400 F.3d 1297, 1306-07 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005), we rejected the very argument Thomas makes here. Duncan, like Thomas, relied on the Supreme Court's Bouie decision and challenged the retroactive application of Booker's remedial opinion to his sentencing, arguing that the application of Booker would increase the maximum sentence to which he was subjected.  We discerned no ex post facto or Bouie due process violation in the retroactive application of the Booker remedial holding because at the time Duncan committed his crime, (1) the United States Code specified a statutory maximum of life imprisonment for his crime; (2) our

11

precedent recognized that the statutory maximum was the maximum specified in the Code; and (3) the Guidelines informed the defendant that the sentencing judge could engage in factfinding and could impose a possible life sentence. Id. at 1307-08; see also United States v. Martinez, 434 F.3d 1318, 1323-24 (11th Cir. 2006) (holding the same where defendant was on notice that the sentencing court would engage in factfinding and could impose a sentence up to the statutory maximum); United States v. Dupas, 419 F.3d 916, 919-21 (9th Cir. 2005) (relying in part on Duncan and rejecting argument that defendant's Bouie due process right to fair warning was violated; highlighting that in Booker, the Court directed that both opinions were to be applied retroactively on direct review), cert. denied, 126 S. Ct. 1484 (2006).

During his plea colloquy, Thomas said he understood that when he committed his crime, the maximum penalty for conspiracy to obstruct, delay, and affect commerce by robbery pursuant to the United States Code was 20 years' imprisonment. See 18 U.S.C. § 1951(a). Moreover, as in Duncan, the Guidelines in effect at the time of Thomas's plea informed him that the judge might engage in judicial factfinding at sentencing and could impose a sentence up to the statutory maximum.

12

In short, we find no merit to Thomas's arguments that he relied on the

constitutional implications of <u>Blakely</u>, rather than <u>Booker</u>. Thomas pled guilty

<u>after</u> <u>Booker</u> and, notably, stated during the plea colloquy that he understood the

court would apply the Guidelines in an advisory fashion. Both when Thomas

committed his crimes and when he pled guilty he was on notice that he could

receive a sentence within the statutory range based upon judicial factfinding that

went beyond the jury's verdict or the facts he admitted in his guilty plea.

Accordingly, we find no <u>ex</u> <u>post</u> <u>facto</u> or <u>Bouie</u> due process violation here.

IV.

We likewise are unpersuaded by Thomas's argument that he had a Fifth

Amendment right to have all of the facts used to enhance his Guidelines range

found by a grand jury and charged in his indictment, pursuant to <u>Blakely</u> and

<u>Booker</u>. According to <u>Apprendi</u> and its progeny, any fact that increases a sentence

beyond the statutory maximum must be charged in the indictment. <u>Apprendi</u>, 530

U.S. at 476. Although <u>Booker</u> held that any fact increasing punishment must be

admitted by the defendant or proved to a jury, we have stated that "both majority

opinions in <u>Booker</u> make clear that the decisive factor that makes pre-<u>Booker</u>

sentencing problematic is not extra-verdict enhancements but their use in a

mandatory guidelines system." <u>Rodriguez</u>, 398 F.3d at 1301; <u>see also</u> <u>United</u>

13

States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (holding that if a district court applies the Guidelines as advisory, nothing in Booker prohibits the district court from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admission).

Because Thomas's 121-month sentence did not exceed the statutory maximum, and the district court applied the Guidelines in an advisory fashion, the district court properly enhanced Thomas's advisory guidelines range based on facts not charged in the indictment or admitted by him.[2]

---

[2] We are unpersuaded by Thomas's related argument, made in the broadest of terms and without citations to caselaw, that there was insufficient evidence to support base offense level enhancements for (1) possessing a firearm, U.S.S.G. § 2B3.1(b)(2)(C); (2) physical restraint of another, U.S.S.G. § 2B3.1(b)(4)(B); (3) the fact that a controlled substance was the object of the robbery, U.S.S.G. § 2B3.1(b)(6); (4) the fact that the loss amount exceeded $250,000 but was less than $800,000, U.S.S.G. § 2B3.1(b)(7)(D); and (5) his role as an organizer or leader in the offense, U.S.S.G. § 3B1.1. The Government bore the burden of establishing by a preponderance of the evidence the facts necessary to support these sentencing enhancements. United States v. Askew, 193 F.3d 1181, 1183 (11th Cir. 1999).

Based on our review, it is plain that Thomas's own admissions, both at the plea colloquy and in the factual proffer he signed in support of his plea, fully support all of these enhancements. Thomas admitted that he conspired with five others to commit a robbery of cocaine and that on the night of the planned robbery, four guns were found in one of his co-defendants' bags when the conspirators were arrested after they rendezvoused to commit the robbery. Thomas further admitted that he planned to take the cocaine through threat or force. Detective Sanchez's testimony that Thomas said he was going to tie Sanchez up during the robbery, as he had during a prior robbery, further supported the enhancement for physically restraining a person. Moreover, Detective Sanchez's testimony that he told Thomas that 25 kilograms of cocaine would be at the home at the time of the robbery and the fact that Thomas indicated he knew that a kilogram was worth $100,000 supported the amount of loss enhancement. Finally, the role enhancement was supported by Detective Sanchez's testimony that Thomas recruited the others and co-defendant Castillo's testimony that Thomas recruited him. Accordingly, the district court did not clearly err in its calculation of Thomas's adjusted offense level.

V.

Finally, Thomas challenges the reasonableness of his sentence. Thomas argues that his 121-month sentence is unreasonable because it is too severe and resulted in significant sentencing disparity, in light of his co-conspirators' sentences ranging from 41 to 53 months' imprisonment. He also contends that the district court did not provide sufficient reasoning to support his 121-month sentence.

At the sentencing hearing, Thomas's counsel asserted the following grounds in support of a sentence below the Guidelines range of 121 to 151 months' imprisonment: (1) Thomas was sorry for his conduct; (2) Thomas faced deportation after his incarceration; (3) Thomas's youth; and (4) Thomas's drinking problem. The district court also heard Thomas's statement asking for forgiveness and stating that if the court would grant him the opportunity to be back with his family, he would not disappoint the court. Finally, the district court acknowledged that Thomas had sent a letter to the court apologizing for his conduct. The government asserted that a sentence at the high end of the Guidelines range was appropriate due to Thomas's role as "the ringleader of the entire operation."

After hearing the parties' argument, the district court complimented Thomas on his candor and, over the government's request for a high-end sentence, imposed

15

a sentence at the lowest end of the Guidelines range, stating that the low-end sentence "adequately addresses the serious nature of the offenses committed by this defendant." In imposing sentence, the court stated that it had considered the PSI, the advisory Guidelines range, and the factors of § 3553(a).

Again, in determining whether a sentence is reasonable, we are guided by the factors in 18 U.S.C. § 3553(a). Booker, 543 U.S. at 261; Winingear, 422 F.3d at 1246. These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
> 　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> 　(B) to afford adequate deterrence to criminal conduct;
> 　(C) to protect the public from further crimes of the defendant; and
> 　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

16

18 U.S.C. § 3553(a). Although sentencing courts must be guided by these factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005); United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) (stating that, post-Booker, district courts need not conduct an accounting of every § 3553(a) factor and expound on how each factor played a role in the sentencing decision).

Here, we readily conclude that Thomas has not met his burden to show error "in the light of both [the] record and the factors in section 3553(a)." Talley, 431 F.3d at 788. At sentencing, the district court heard defense counsel's argument in support of mitigation and Thomas's statement of remorse, and noted Thomas's letter of apology to the court. These items all concerned "the nature and circumstances of the offense and the history and characteristics of the defendant," within the meaning of § 3553(a)(1), since they pertained to Thomas's family circumstances, his youth, his drinking problems, and his deportation situation. Moreover, in imposing sentence, the district court expressly mentioned "the serious nature of the offenses committed by this defendant." See 18 U.S.C. § 3553(a)(2) (discussing factors pertaining to "the need for the sentence imposed," including "the seriousness of the offense"). The parties' arguments and the PSI's

17

calculations outlined "the kinds of sentences available," id. at § 3553(a)(3), and Thomas received a low-end sentence that was just over one-half the length of the 20-year statutory maximum. Cf. Martinez, 434 F.3d at 1322-33 (conducting reasonableness review and specifically noting that the sentence was "almost one-third the length of the twenty-year statutory maximum sentence"); Winingear, 422 F.3d at 1246 (reviewing reasonableness of sentence and noting that defendant's sentence was "one-tenth the length of the twenty-year statutory maximum sentence").

As for Thomas's argument concerning sentencing disparities among defendants, 18 U.S.C. § 3553(a)(6), we are hard-pressed to find that imposing a longer sentence on Thomas, when compared to his co-conspirators, was unreasonable. Thomas alone coordinated the robbery during his contacts with the undercover agent. His coordination efforts included (1) determining the manner by which the crime would be committed and the level of violence necessary to carry out the crime; (2) recruiting the other defendants to participate in a scheme to steal cocaine from Colombian drug traffickers; and (3) obtaining four firearms in furtherance of the crime. We conclude it was well within the bounds of reasonableness for the district court to find that Thomas was an organizer or leader

of the conspiracy to obstruct commerce by robbery, and therefore to impose a lengthier sentence on him than on the others.

In sum, the district court correctly calculated the Guidelines range, considered the Guidelines advisory, adequately took into account the factors in 18 U.S.C. § 3553(a), and imposed a sentence that was at the low end of the Guidelines range and was significantly less that the 20-year statutory maximum Thomas faced. Accordingly, Thomas's sentence was reasonable in light of the record and the factors of § 3553(a).

**AFFIRMED.**