[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13581
Non-Argument Calendar

_____

D. C. Docket No. 07-00148-CR-BBM-4-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TRAVIS BODENHAMER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 16, 2009)

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty, Travis Bodenhamer[1] appeals his 120-month sentences for conspiracy to distribute and possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(A)(ii) and 18 U.S.C. § 2.  After review, we affirm.

## I.  BACKGROUND FACTS

In April 2007, Drug Enforcement Agency ("DEA")  agents received information from a confidential source that members of a cocaine distribution organization that brought drugs from Mexico were looking for new distributors in the Atlanta area.  An undercover agent, posing as a cocaine dealer looking for a new supplier, met with members of the cocaine distribution organization and arranged for a shipment of cocaine to be delivered.

After conducting surveillance of the cocaine shipment's delivery to Atlanta, agents stopped the vehicles of members of the cocaine distribution organization.  Inside one of the vehicles, agents found three suitcases containing 60 kilograms of cocaine.  DEA agents debriefed one of the members and learned that the cocaine had been transported from Texas by Defendant Bodenhamer, who had not yet been arrested.

---

[1]Bodenhamer's name was misspelled in the indictment and in other district court pleadings.

When agents approached Bodenhamer in Texas, he agreed to cooperate. Bodenhamer admitted that he had transported the cocaine to Atlanta and that, since January 2007, he had been paid $600 per kilogram of cocaine he transported. Bodenhamer also turned over to agents a ledger for 2007 that showed seven prior cocaine pickups or deliveries involving a total of 235 kilograms of cocaine. Bodenhamer indicated that he currently was storing 71 kilograms of cocaine, 50 kilograms of which he was to deliver to Atlanta, with the remainder to be delivered to Grand Rapids, Michigan. After Bodenhamer told agents where they could find the cocaine in his backyard, agents seized the 71 kilograms of cocaine and $65,000 in cash. Later, while under law enforcement supervision, Bodenhamer made controlled deliveries of the cocaine found in his backyard to Atlanta and Michigan.

## II. DISCUSSION

### A. Drug Quantity Calculation

Bodenhamer argues that the district court erred in calculating the drug quantity attributed to him for sentencing purposes.[2]

A district court must take into account all "relevant conduct" when determining the drugs attributable to the defendant for sentencing purposes. U.S.S.G. § 1B1.3(a)(1). Thus, "the defendant is accountable for all quantities of

---

[2]We review for clear error a district court's determination of drug quantity. United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).

contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3 cmt. n.2. Where "the amount [of drugs] seized does not reflect the scale of the offense," the sentencing court shall estimate the drug quantity by considering, inter alia, financial or other records. U.S.S.G. § 2D1.1, cmt. n.12. "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." Rodriguez, 398 F.3d at 1296.

Bodenhamer's presentence investigation report ("PSI") attributed 366 kilograms of cocaine to Bodenhamer and included the 235 kilograms of cocaine deliveries/pickups listed in Bodenhamer's ledger. Specifically, the relevant conduct section of the PSI included a chart that detailed the ledger entries by date, drug amount, location and amount of money paid, as follows:

| Date | Drug/Amount | Location | Amount Paid |
|------|-------------|----------|-------------|
| January 11, 2007 | 20 kilograms of cocaine | Houston, Texas | $12,000 |
| January 18, 2007 | 40 kilograms of cocaine | Grand Rapids, Michigan | $24,000 |
| February 5, | 20 kilograms of | Houston, Texas | $9,000 |

4

| 2007 | cocaine | | |
|------|---------|---|---|
| February 15, 2007 | 30 kilograms of cocaine | Grand Rapids, Michigan | $24,000 |
| March 8, 2007 | 40 kilograms of cocaine | Grand Rapids, Michigan | unknown amount |
| March 16, 2007 | 41 kilograms of cocaine | transported 20 to Tampa, Florida, and 21 to Ocala, Florida | unknown amount |
| April 4, 2007 | 44 kilograms of cocaine, and picked up $750,000 cash | Grand Rapids, Michigan | unknown amount |
| Totals | 235 | | $69,000 |

The PSI recommended holding Bodenhamer accountable for the 235 kilograms set forth in the chart, as well as the 131 kilograms of cocaine seized during the undercover investigation, for a total of 366 kilograms of cocaine.

At sentencing, Bodenhamer objected to the inclusion of the 235 kilograms of cocaine from the ledger. Bodenhamer argued that these amounts reflected in the ledger should not be counted because the ledger was not supported by any other corroborating evidence and thus was insufficient to carry the government's burden of proof. The district court overruled Bodenhamer's objection, stating "under the rules it counts, so I'm going to count it."

We conclude that the district court's drug quantity determination was not

clearly erroneous. Bodenhamer admitted to agents that he had been delivering cocaine for the drug distribution ring since January 2007 and was paid $600 per kilogram he delivered. Bodenhamer then turned over his ledger, which showed seven prior drug deliveries. Bodenhamer also completed his last two deliveries under law enforcement supervision, one of which was to the Grand Rapids area of Michigan.

Although the ledger was not introduced into the record, the chart within the PSI provided the ledger's actual entries. Notably, Bodenhamer did not dispute that the contents of the chart came from his ledger or claim that the chart was inaccurate. See United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006) ("A sentencing court's findings of fact may be based on undisputed statements in the PSI."). According to the chart, the first cocaine delivery in the ledger occurred on January 11, 2007. Some of the ledger entries reflect a pay equal to $600 per kilogram, and four of the deliveries were to Grand Rapids, Michigan, where the final controlled delivery occurred. These undisputed facts are sufficient to support the district court's finding by a preponderance of the evidence that Bodenhamer was involved with the seven cocaine deliveries listed in the ledger and that these deliveries were relevant conduct to the instant offense.

Contrary to Bodenhamer's claims, his case is not analogous to United States

6

v. Lawrence, 47 F.3d 1559 (11th Cir. 1995). In Lawrence, the PSI's undisputed factual statements about drug quantity related only to the number of transactions that occurred in four hours of surveillance tape and the average weight of the drugs sold on that day. Id. at 1562-64. The sentencing court used these figures to extrapolate the defendants' drug quantities over the life of the conspiracy. Id. at 1565. The PSI also failed to reveal the source for much of the information it contained. Id. at 1567-68. The Lawrence Court concluded that the PSI "did not provide the necessary evidentiary foundation," particularly with regard to each defendant's individual involvement. Id.

Here, unlike in Lawrence, the PSI contained undisputed facts about each individual drug shipment attributed to Bodenhamer. The source of this information—the ledger provided by Bodenhamer himself—was clearly identified and not in dispute. The undisputed facts in the PSI were sufficient to support the sentencing court's drug quantity finding by a preponderance of the evidence.

Additionally, there is no merit to Bodenhamer's argument that the district court failed to make a factual finding as to whether the ledger reflected relevant conduct. The district court explicitly stated that the Sentencing Guidelines required the drug shipments in the ledger to be counted and indicated that it would count them.

**B.     Reasonableness**

We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1189-90 (11th Cir. 2008). First, we look at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory or failing to consider the 18 U.S.C. § 3553(a) factors. Id. Then, we look at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[3] Although we do not apply a presumption of reasonableness to a sentence imposed within the correctly calculated advisory guidelines range, we ordinarily expect such a sentence will be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

The only procedural irregularity Bodenhamer identifies is the calculation of the drug quantity attributed to him. As already discussed, the district court did not

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

err in determining the drug quantity.

Furthermore, Bodenhamer's 120-month sentence, which was below the advisory guidelines range of 135 to 168 months' imprisonment, is not substantively unreasonable in light of the § 3553(a) factors. Bodenhamer argues that the district court failed to adequately consider his cooperation with the government, his first-time offender status and the fact that his co-defendants, who were equally or more culpable, received lower sentences. The record does not bear this out. Among other things, the district court specifically noted that Bodenhamer had cooperated with the government and was a first-time offender. Indeed, the district court granted Bodenhamer safety-valve relief and a downward variance based on that cooperation. The district court also acknowledged that one of Bodenhamer's co-defendants had received a lighter sentence, and explained that this was because the co-defendant's cooperation was even more valuable than Bodenhamer's cooperation.

Although Bodenhamer asserts that all of his co-defendants received lower sentences, Bodenhamer has not provided the kind of information needed to show that any disparity in their sentences is unwarranted. For example, Bodenhamer does not dispute the government's claim that two co-defendants, Cesar and Jesus Chacon, were sentenced based on substantially smaller drug quantities. In sum,

9

Bodenhamer has not carried his burden to show his sentence was unreasonable.

**AFFIRMED.**