[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13516
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 12, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-10060-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSMANY AGUILA-MADALAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 12, 2010)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After pleading guilty, Osmany Aguila-Madalay ("Aguila-Madalay") appeals

his 60-month sentence for conspiracy to encourage or induce aliens to come to the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). After review, we affirm.

## I. BACKGROUND

According to the presentence investigation report ("PSI"), after midnight on July 28, 2007, a United States Coast Guard ("USCG") cutter found a vessel dead in the water. As the cutter approached, the vessel fled, beginning a high-speed pursuit that lasted several hours and involved at least two USCG vessels. The fleeing vessel ignored the USCG's hails, blue lights and warning shots and engaged in evasive maneuvers. During the chase, the vessel attempted to ram the USCG cutter and the vessel's passengers threw objects at the cutter.

The USCG disabled and boarded the vessel and found thirty-nine Cuban nationals on board, along with Rubi Perez and Defendant Aguila-Madalay. Perez operated the vessel during the chase, with Aguila-Madalay standing beside him at the console. Although there were over forty people on board the vessel, only seventeen personal floatation devices were found. Aguila-Madalay did not object to these facts in the PSI.

The PSI recommended: (1) a base offense level of 12, pursuant to U.S.S.G. § 2L1.1(a)(3); (2) a six-level increase, pursuant to § 2L1.1(b)(2)(B), because the

2

offense involved smuggling between 25 and 99 aliens; (3) a two-level increase, pursuant to § 2L1.1(b)(6), for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person based on the insufficient number of floatation devices; and (4) two-level increase, pursuant to § 3C1.2, for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

The PSI gave Aguila-Madalay one criminal history point for a prior conviction for driving under the influence ("DUI") and two criminal history points for committing the instant federal offense while on probation. With a criminal history category of II and a total offense level of 22, the PSI recommended an advisory guidelines range of 46 to 57 months' imprisonment. The PSI noted that the statutory maximum for Aguila-Madalay's offense was ten years. See 8 U.S.C. § 1324(a)(1)(B)(i).

Aguila-Madalay objected to the two-level increase for reckless endangerment during the vessel's flight, arguing that he was not the vessel's operator. At the sentencing hearing, Aguila-Madalay testified that he did not operate the boat during the chase and told Perez to stop more than once, but Perez refused. Based on this testimony, the district court sustained Aguila-Madalay's objection. Aguila-Madalay also objected to not receiving a three-level reduction

3

for acceptance of responsibility. The district court overruled this objection because Aguila-Madalay tested positive for a controlled substance while out on bond.

The district court found that Aguila-Madalay's total offense level was 20, which, with a criminal history category of II, yielded an advisory guidelines range of 37 to 46 months' imprisonment. Aguila-Madalay expressed regret for committing his offense and stated that he would not repeat it. Aguila-Madalay argued in mitigation that since coming to the United States in 1995, he had remained gainfully employed as a handyman and, with the exception of his DUI conviction, had been a good member of society. Aguila-Madalay requested a sentence at the low end of the range.

The district court, however, imposed a 60-month sentence, 14 months above the high end of the advisory range. The court noted that in a recent, similar alien-smuggling case the defendants had received 60-month sentences, although that case did not involve a high-speed chase or objects being thrown from the vessel. The district court stated that, in considering the § 3553(a) factors, "including the nature and circumstances of the offense which we have discussed, the high speed chase, the history and characteristics of the defendant, that he committed this while he was on probation from serving another offense," a sentence within the advisory guidelines range was "inadequate to afford adequate deterrence to criminal

4

conduct, to protect the public from further crimes of the defendant, and to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense." Aguila-Madalay filed this appeal, arguing that his 60-month sentence is substantively unreasonable.

## II. DISCUSSION

We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[1]

"If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

5

degree of the variance.'"  United States v. Williams, 526 F.3d 1312, 1322 (11th

Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597

(2007)).  Likewise, although "[s]entences outside the guidelines are not presumed

to be unreasonable, . . . we may take the extent of any variance into our calculus."

United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct.

2847 (2009).  However, we "must give due deference to the district court's

decision that the § 3553(a) factors, on the whole, justify the extent of the variance."

Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Here, Aguila-Madalay has not met his burden to show his 60-month

sentence was substantively unreasonable.[2]  Aguila-Madalay was involved with a

scheme to smuggle thirty-nine aliens into the United States on a vessel that was not

equipped with enough floatation devices for all its passengers.  When discovered,

the vessel engaged in a dangerous, high-speed chase and the passengers threw

objects at the USCG.  The USCG had to deploy disabling devices to stop the

vessel.  Aguila-Madalay committed this high-risk offense while on probation for a

prior conviction.  Under the totality of the circumstances, we cannot say the district

court's decision to impose an 14-month upward variance was an abuse of

discretion.

_____

[2]Aguila-Madalay does not challenge the district court's guidelines calculations or argue
that the sentence was procedurally unreasonable.

6

Contrary to Aguila-Madalay's assertion, Aguila-Madalay's prior conviction was not the sole basis for the upward variance. The district court specifically referenced the dangerous circumstances of the offense and the fact that a sentence within the advisory guidelines range would not reflect its seriousness or provide adequate deterrence or protection to the public. Furthermore, the fact that the district court relied in part on Aguila-Madalay's prior conviction and his probationary status does not make the upward variance unreasonable. See United States v. Amedeo, 487 F.3d 823, 833-34 (11th Cir. 2007) (finding it reasonable for district court to impose upward variance based on factors already considered in imposing a guidelines enhancement).

**AFFIRMED.**