[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14553
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00174-CR-T-26-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUSTINIANO CALLES-GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 25, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Justiniano Calles-Gomez appeals his sentence of 60 months' imprisonment,

imposed after he pled guilty to reentry of a deported alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(1) (Count One), and unlawful entry by an alien, in violation of 8 U.S.C. §§ 1325(a)(1) and 1329 (Count Two). After review, we affirm.

## I. BACKGROUND FACTS

**A.   Offense Conduct**

Calles-Gomez is a Mexican citizen who works on shrimp vessels. Although Calles-Gomez has never lawfully been admitted to the United States, he repeatedly has been found either inside this country or attempting to enter.

In 1992, Calles-Gomez was arrested in Brownsville, Texas and convicted in state court of driving while intoxicated. Although it does not appear Calles-Gomez was deported after this conviction, at some point Calles-Gomez returned to Mexico because, between October 1997 and February 1999, Calles-Gomez was apprehended at the U.S. border four times and returned to Mexico.

In August 2002, the U.S. Coast Guard discovered Calles-Gomez on a shrimp boat in the Brownsville area and turned him over to Border Patrol agents. This time, Calles-Gomez was convicted in federal court of illegally entering the United States, sentenced to time-served and deported to Mexico on September 23, 2002.

Calles-Gomez again illegally re-entered the United States. In April 2005, Calles-Gomez came to the attention of authorities when he assaulted his wife, who

2

lives in Brownsville with their five children. In Texas state court Calles-Gomez was convicted of misdemeanor assault and sentenced to a six-month jail term. When his state jail term ended, Calles Gomez was turned over to federal immigration authorities. On October 11, 2005, Calles-Gomez was convicted in federal court of being an alien unlawfully found in the United States after deportation. Calles-Gomez was given a 118-day sentence, after which he was again deported to Mexico.

On March 13, 2009, an enforcement officer with the U.S. Customs and Border Protection Office encountered Calles-Gomez at the Port of Tampa, Florida. The officer determined that Calles-Gomez was a prior deported alien who had previously been convicted of a felony and detained him. This last entry into the United States is the basis for the instant offenses.

**B.    Sentencing**

Calles-Gomez pled guilty to both counts in the indictment. The presentence investigation report ("PSI"): (1) assigned Calles-Gomez a base offense level of eight, pursuant to U.S.S.G. § 2L1.2(a); (2) added four levels because he previously was deported after his 2005 felony conviction for being an alien unlawfully found in the United States after deportation, pursuant to U.S.S.G. § 2L1.2(b)(1)(D); and (3) subtracted two levels for his acceptance of responsibility, pursuant to U.S.S.G.

3

§ 3E1.1(a). A total offense level of 10 and a criminal history category of III yielded an advisory guidelines range of 10 to 16 months' imprisonment. The statutory maximum term was ten years for Count One and two years for Count Two. Calles-Gomez did not object to the PSI's facts or guidelines calculations.

At sentencing, the district court adopted the PSI and found that Calles-Gomez's advisory guidelines range was 10 to 16 months. Calles-Gomez asked for a sentence within the advisory range. Calles-Gomez stressed that his two previous sentences for his federal immigration offenses were short (time-served in 2002 and four months in 2005) and that a guidelines sentence would be considerably more time than he had ever served before. He also argued that he re-entered the United States for work purposes and for better opportunities. Calles-Gomez personally apologized for his crimes and stated that he was not aware that he would face such a long prison sentence or he would not have returned to the United States.

The district court reviewed Calles-Gomez's criminal history. The district court opined that sending Calles-Gomez back to Mexico and giving him short sentences did not deter him given that he continued to come back to the United States. The district court also noted that it had just sentenced another, very similar defendant for immigration offenses. The district court stated that it had heard the parties' arguments and considered the § 3553(a) factors. The court explicitly

4

noted: (1) the nature and circumstances of the immigration offenses, which it described as serious, and that a serious illegal immigration problem exists in the United States; (2) Calles-Gomez's history and characteristics, which indicated that "[h]e just will not be deterred from coming into this country illegally"; (3) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct and protect the public from further crimes of the Defendant"; and (4) the sentences the court had imposed in other illegal immigration cases, including the case it had heard immediately before Calles-Gomez's, and the need to avoid unwarranted sentencing disparities among similar defendants.

The district court stressed that Calles-Gomez had been ordered to leave the United States on seven occasions and told not to return. The court stated that it considered the other § 3553(a) factors, but that, "in [the court's] mind, the emphasis should be on the factors [the court] just identified in fashioning a reasonable sentence in this case." The court imposed a 60-month sentence for Count One and a concurrent 24-month sentence for Count Two. The total 60-month sentence was 44 months above the high end of the advisory guidelines range of 10 to 16 months. The court found that the sentence was "fair and reasonable,

and is sufficient but not greater than necessary to comply with the statutory purposes of sentencing." Calles-Gomez objected to the court's upward variance. This appeal followed.

## II. DISCUSSION

On appeal, Calles-Gomez argues that his 60-month sentence is unreasonable. We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[1]

"If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)). Likewise, although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct. 2847 (2009). However, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Here, Calles-Gomez has not met his burden to show his 60-month sentence was procedurally or substantively unreasonable. Procedurally, there is no dispute the district court correctly calculated the advisory guidelines range. The record belies Calles-Gomez's claims that the court failed to consider the § 3553(a) factors or Calles-Gomez's mitigation arguments and failed to explain its decision to impose an upward variance. To the contrary, the district court explicitly considered the § 3553(a) factors and the parties' arguments, explained that the majority of the factors outweighed Calles-Gomez's arguments in mitigation and provided a thorough rationale for its choice of sentence. Although Calles-Gomez is correct that the district court did not explicitly discuss the need for him to receive education or vocational training, the sentencing court is not required to

7

discuss each factor; rather an acknowledgment that it has considered all the factors is sufficient. See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

Finally, the fact that the district court took into account Calles-Gomez's prior illegal re-entries in calculating the advisory guidelines range and in deciding to impose an upward variance does not make the sentence unreasonable. See United States v. Williams, 526 F.3d 1312, 1323-24 (11th Cir. 2008) (stating that district court may consider the defendant's prior offenses under the § 3553(a) factors in deciding to impose an upward variance even though they had also been used to calculate the defendant's criminal history score). Nothing in § 3553(a) or our binding precedent suggests that a district court should ignore those § 3553(a) factors that have some overlap with the Sentencing Guidelines. See United States v. Amedeo, 487 F.3d 823, 833-34 (11th Cir. 2007) (rejecting argument that because conduct was considered in imposing guidelines enhancement, it could not be considered under the § 3553(a) factors in imposing an upward variance).

Calles-Gomez also has not shown that his 60-month sentence is substantively unreasonable. Calles-Gomez repeatedly defied orders not to re-enter the United States. The record documents at least seven entries or attempted entries. Calles-Gomez committed the instant re-entry offenses in 2009 despite already having been prosecuted and convicted for illegal re-entry offenses in 2002 and

8

2005. Clearly, the shorter imprisonment sentences Calles-Gomez served had not had a deterrent effect. Additionally, apart from his immigration offenses, Calles-Gomez committed other crimes while in the United States.

Based on these facts, the district court concluded that a significant upward variance was needed to reflect the seriousness of the offense, promote respect for the law, protect the public and deter Calles-Gomez from again re-entering the country and committing future crimes here. The district court's stated concerns over Calles-Gomez's recidivism and criminal history in the United States were sufficiently compelling to support the degree of the variance. See, e.g., Shaw, 560 F.3d at 1240-41 (affirming an 83-month upward variance based in large part on district court's concern over defendant's long criminal history that was undeterred by shorter sentences). Under the totality of the circumstances, we cannot say the district court's decision to impose a 60-month sentence was an abuse of discretion.

**AFFIRMED.**