[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11809
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:10-cr-00069-MHT-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH LEE STEWART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 9, 2011)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Kenneth Lee Stewart appeals his sentence for

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court imposed a 60-month sentence, 27 months above Stewart's advisory guidelines range of 27 to 33 months' imprisonment. On appeal, Stewart argues that this upward variance is procedurally and substantively unreasonable. After review, we affirm Stewart's 60-month sentence.

## I.  DISCUSSION

We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. Id.

Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances, "including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).[1]  "If the sentence imposed is outside the

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for

Guidelines range, [we] must determine that the district court's consideration of the 3553(a) factors justified the variance." United States v. Jayyousi, 657 F.3d 1085, 1116 (11th Cir. 2011). The defendant bears the burden to show his sentence is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006). "[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quotation marks omitted). A sentence imposed well below the statutory maximum is another indicator of a reasonable sentence. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

## A. Procedural Reasonableness

The district court found that Stewart: (1) possessed the firearm with an "evil motive"; and (2) committed perjury during his sentencing hearing. Stewart contends these facts are clearly erroneous and argues his sentence is procedurally unreasonable because the district court based its decision to vary upward on these clearly erroneous facts. We find no clear error in either of the district court's

---

deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

factual findings.[2]

At the sentencing hearing, the district court credited the testimony of Officer Jerry Boykins over Stewart's testimony as to the events. According to Officer Boykins, on August 7, 2009, a local prostitute, named Stephanie Jackson, flagged him down while on patrol. Jackson reported that a black male had forced her friend into a truck at gunpoint and driven away. Officer Boykins proceeded in the direction Jackson indicated and spotted a truck matching the description given by Jackson.

Officer Boykins initiated a traffic stop and approached the truck once backup arrived. The driver, a black male, was Defendant Stewart. Sitting next to him was a woman, Alice Barlow, who was naked from the waist up. As Officer Boykins approached, Barlow whispered to him, "I need help. I need to get out of here." Officer Boykins asked Defendant Stewart if there were any weapons in the truck, and Stewart said no. After Stewart complied with the request to exit the truck, Officer Boykins took Barlow to his patrol car. Barlow told Officer Boykins that she wanted to get away from Stewart and that he had a weapon somewhere in

---

[2]We review a sentencing court's fact findings for clear error and will reverse only if "after making all credibility choices in favor of the fact-finder and reviewing the record as a whole, it is clear that a mistake has been made." United States v. Ladson, 643 F3d 1335, 1341 (11th Cir.), cert. denied, ___ S. Ct. ___, No. 11-6575, 2011 WL 4460103 (U.S. Oct. 31, 2011).

the truck. Upon searching the truck, Officer Boykins found a black and silver semiautomatic pistol under the driver's side seat.[3]

Mike Myric, a homicide detective, also testified at Stewart's sentencing hearing. Detective Myric interviewed Defendant Stewart and Alice Barlow because the firearm found in Stewart's truck was used eight months earlier in a shooting incident in a hotel room. During this December 2009 shooting incident, a prostitute named Burnette Blue was critically injured and her boyfriend, Shawn Rogers, was killed.

According to Detective Myric, Alice Barlow told him that she and Stephanie Jackson encountered Defendant Stewart at a truck stop when he offered to help them get marijuana. Stewart drove them to a hotel parking lot, where he pulled a gun from his glove box and said he would shoot them if they did not have sex with him. Defendant Stewart made Jackson lie face down on the ground and ordered Barlow to remove her clothing. Stewart then changed his mind, ordered Barlow back into his truck and drove away with her. Defendant Stewart told

---

[3]Stewart's version of the traffic stop was wholly different. Rather than having Barlow unclothed and afraid in his truck, Stewart testified that he was giving a ride to a male friend and a woman (who was fully dressed) when a police officer, not Officer Boykins, pulled Stewart's truck over. Once the truck stopped, Stewart's male friend and the woman jumped out of the truck and ran away. Officer Boykins arrived on the scene only after Defendant Stewart had exited his truck and was sitting next to a patrol car. Stewart claimed he saw the woman who had been riding in his truck return to the scene and talk with Officer Boykins.

Barlow to get dressed. While Barlow was putting on her clothes, a police officer pulled Defendant Stewart's truck over.

During Detective Myric's interview, Defendant Stewart admitted that he shot Blue and Rogers in December 2009. Stewart also said that, after he had sex with Blue in the hotel room, Rogers entered with a gun, demanded Stewart's money and left. Believing he "had been set up," Defendant Stewart demanded that Blue give him his money back. When Blue resisted, Defendant Stewart retrieved his firearm from his car and went back into the hotel room. Stewart told Detective Myric that "pride made him go back in." When Blue would not return his money, Defendant Stewart cocked the firearm to scare her, but then "realized he had shot her." Stewart tried to leave the hotel room and encountered Rogers in the doorway. Believing Rogers had a weapon, Defendant Stewart squatted down and fired at Rogers, shooting him in the throat.

The government also submitted a transcript of Defendant Stewart's statement to Detective Myric. During the interview, Defendant Stewart said that he demanded his money from Blue, but had no intention of shooting anyone. Through a window, Stewart thought he saw Rogers returning and was "twisting and turning back and forth trying to watch him and watch her." Defendant Stewart stated, "The situation pretty much got out of control to the point where I told her,

6

'Give me my money,' and I pulled the trigger."[4]

The district court found that Stewart "failed to show consideration of others, and instead acted with an evil motive." The district court explained that Defendant Stewart's own admission that in December 2008 he had shot Blue after demanding that she give him his money showed "an evil mind at work." The district court pointed out that, on August 7, 2009, Defendant Stewart "had the same gun he had when he shot Ms. Blue," and concluded that Stewart had "without question, beyond a reasonable doubt the evil motive as well." The district court elaborated that Defendant Stewart possessed the firearm in this offense with the specific intent to hurt someone and that, if Stewart had encountered someone who offended him, "he would have shot that person." The district court's finding that Defendant Stewart possessed the gun with "an evil motive," that is, with the intent to use the gun to harm someone, is supported by the government's evidence presented at the sentencing hearing.

Defendant Stewart emphasizes that the district court found that the government failed to prove he kidnapped Jackson and Barlow. The district court did find that although the government's hearsay evidence supported the

---

[4]At the time of this sentencing, Defendant Stewart faced state charges of capital murder of Rogers and attempted murder of Blue.

kidnapping scenario, it was not convincing enough to meet the preponderance-of-the-evidence standard.[5] The court pointed out neither Jackson nor Barlow testified at the hearing. Nonetheless, contrary to Stewart's contention, this kidnapping finding is not inconsistent with the district court's separate finding that Stewart possessed the firearm with an "evil motive." The district court credited Officer Boykins' testimony that when he pulled over Defendant Stewart's truck, he found Barlow inside, unclothed from the waist up, and clearly afraid of Stewart, whom she knew had a weapon in his truck. Regardless of how Barlow got into Stewart's truck, the circumstances in which Officer Boykin found her fearful during the traffic stop, coupled with the fact that Stewart admitted using the same firearm eight months earlier to shoot another woman who had offended his pride, support the court's finding that Defendant Stewart possessed the firearm with the intent to use it to harm someone.

We also find no clear error in the district court's finding that Defendant Stewart committed perjury during the sentencing hearing. The district court found that Officer Boykins' testimony was "more credible," and that while Officer

---

[5]Because the district court found that the government had not proved Stewart kidnapped Barlow and Jackson during the offense, the district court declined to calculate Stewart's offense using U.S.S.G. § 2A4.1(a), which would have resulted in an advisory guidelines range of 235 to 293 months. Instead, the district court calculated Stewart's offense level using U.S.S.G. § 2K2.1(a)(4)(A), which yielded the significantly lower advisory guidelines range of 27 to 33 months.

Boykins told the truth, Defendant Stewart "perjured himself; that is, he intentionally did not tell the truth."

We give deference to a sentencing court's credibility findings. United States v. Glinton, 154 F.3d 1245, 1259 (11th Cir. 1998). Moreover, under this deferential standard, "[w]here the factfinding resolves a swearing match of witnesses, the resolution will almost never be clear error." United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). Here, giving due deference to the district court's credibility finding, Officer Boykins' testimony about the events of the traffic stop directly contradicted Defendant's Stewart's testimony. Although Stewart tries to minimize the contradiction by characterizing it as minor or immaterial, we disagree. At sentencing, the circumstances in which Stewart was found in possession of the gun are material. See 18 U.S.C. § 3553(a)(1) (listing "the nature and circumstances of the offense" as one of the factors the district court must consider in choosing a sentence). The record supports the district court's finding of perjury.

## B.    Substantive Reasonableness

Stewart argues the district court's 27-month upward variance was

substantively unreasonable because it was based on an impermissible factor.[6] See

United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009) (stating that a

sentence may be substantively unreasonable if, inter alia, the district court based it

on an impermissible factor).  Stewart contends the district court should not have

considered the December 2008 shooting because it was not relevant conduct.

The problem for Stewart is that the district court was not limited to relevant

conduct in considering what sentence to impose.  Indeed, § 3553(a) requires the

district court to consider not only the circumstances of the charged offense but

also the "history and characteristics of the defendant," which would include the

defendant's criminal history and propensity for violence, and the need for the

sentence to, among other things, protect the public and deter further criminal

conduct.  See 18 U.S.C. § 3553(a)(1),(2)(B),(C).  The district court identified these

factors to be "critical," and "of primary importance" in Stewart's case.  The district

court's consideration of Stewart's December 2008 shooting of Blue and Rogers

implicated all of these permissible factors.

Furthermore, we cannot say the district court abused its discretion in

_____

[6]Stewart also argues that the upward variance was based on speculation as to Stewart's evil motive for possessing the firearm.  This is merely a reformulation of his argument that the district court clearly erred in finding that Stewart possessed the firearm with the intent to harm someone.  For the reasons already stated, the district court's finding was supported by the evidentiary record and was not speculation.

10

imposing the 27-month upward variance.  Stewart's prior felony conviction was for arson.  According to paragraph 30 of the Presentence Investigation Report (to which Stewart did not object), Stewart started the fire in front of witnesses after arguing with, and beating, a woman.  Stewart admitted that his arson resulted in burn injuries to another woman and her two small children who were in the home at the time.  Less than three years after Stewart was released from prison, Stewart shot Blue and Rogers after arguing with them.  Eight months after that, Stewart still had the firearm when Officer Boykins pulled him over under suspicious circumstances.  At that time, the firearm was under Stewart's seat, and Stewart's passenger, Barlow, was naked from the waist up and asking Officer Boykins for help.  When Barlow was safely out of the truck, she warned Officer Boykins that Stewart had a gun.

Given Stewart's history of violence, the circumstances of Stewart's possession of the firearm, and the need to protect the public from Stewart and to deter Stewart from committing further crimes, the district court's decision to impose a 60-month sentence, well-below the ten-year statutory maximum, was reasonable.

**AFFIRMED.**

11