[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 19, 2010
JOHN LEY
CLERK

No. 09-11589
Non-Argument Calendar

_____

D. C. Docket No. 06-60317-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISHMAEL GRANT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 19, 2009)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Ishmael Grant ("Grant") appeals his 97-month sentence, imposed on

resentencing following his convictions for: (1) conspiracy to commit aggravated identity fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. §§ 371 and 3237; (2) mail fraud, in violation of 18 U.S.C. § 341; and (3) wire fraud, in violation of 18 U.S.C. § 1343. Grant first argues that the district court based its sentence on clearly erroneous factual findings. Specifically, he states that the district court made unsupported factual findings concerning the connection between his mortgage fraud and the nationwide economic crisis and that the district court clearly erred in finding that his role was equal to that of Yvette Scott Patterson, the overall ringleader of the conspiracy. Grant also argues that his sentences are substantively unreasonable based on the 18 U.S.C. § 3553(a) factors. After reviewing the record, we find that there were no procedural errors in Grant's resentencing, and that Grant's 97-month sentence is substantivally reasonable. Accordingly, we AFFIRM Grant's sentence.

## I. BACKGROUND

For a full discussion of facts, see United States v. Grant, 320 Fed. Appx 898 (11th Cir. 2008) (per curiam). In that unpublished opinion, we concluded that the district court's factual findings were not sufficient to support the application of the vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1), but upheld Grant's convictions and sentence in all other respects. Grant, 320 Fed. Appx. at 910.

2

Notably, we affirmed Grant's four-level role enhancement for being a leader or organizer.  Id. at 908.

On remand, the government filed a resentencing memorandum indicating that it would no longer seek a vulnerable-victim enhancement.  R2-395 at 2.  With respect to the § 3553(a) factors, the government suggested that an upward variance might be appropriate based on "the large amount of fraudulent loans" and "the identity theft issues" in this case.  Id. at 3.  The government stated that, at a minimum, the court should resentence Grant to the high end of his recalculated guideline range, 97 months.  Id. at 4.

Grant also filed a resentencing memorandum addressing the § 3553(a) factors.  R2-400.  Grant noted that he was 63 years old and was suffering from a variety of physical ailments, including diabetes and blindness in one eye.  Id. at 2. He stated that he "continue[d] to preach the [B]ible" to other inmates while incarcerated.  Id.  In addition, Grant argued that the court should consider the actions of mortgage lenders in determining an appropriate sentence:

> Today much more is known about what has become known as the 'subprime mortgage crisis' than was known when the defendant was [originally] sentenced in this case . . . Suffice to say the role played by banks and other lending institutions, aptly expressed during trial through use of the term 'the full doc loan' (wherein banks abdicated their responsibility to assure the bona fide of the underlying information provided on otherwise fully complete loan documentation), contributed to the ongoing economic crisis faced

3

today, at least as much as all the participants in the present case combined."

Id. at 2-3.

At the resentencing hearing, Grant asked the district court to consider his activities in the context of the nationwide subprime-mortgage crisis. R14 at 7. He noted that many banks and lending institutions had failed to adequately review loan applications and had given mortgages to individuals who could not afford them. Id. at 7-9. He requested that the court "consider a sentence that incorporates the full gamut of what transpired in this crisis involving many people and many institutions." Id. at 8.

Grant also argued that his role in the conspiracy was less than that of some of his co-conspirators. Id. at 9-11. He conceded that he had recruited "credit-worthy" straw buyers to obtain the fraudulent mortgages, but asserted that he had not been involved in preparing the fraudulent loan documents. Id. at 10-15. Grant noted that several of his codefendants had received sentences of less than three years of imprisonment. Id. at 15.

In response, the government argued that Grant had full knowledge of the fraudulent loan documents. Id. at 15-17. The government also stated that the mortgage fraud could not be blamed on the lenders because they relied upon the fraudulent information that Grant's mortgage business provided. Id. at 17. With

4

respect to Grant's role in the offense, the government asserted that the only other conspirator who came close to Grant's level of involvement was Yvette Scott Patterson, Grant's partner in the mortgage business. Id. at 18.

The district court gave Grant two opportunities to allocute during the resentencing hearing. See id. at 5-6, 23-24. In his first statement, he asserted that the witnesses against him had deliberately lied in their testimony. Id. at 6. In his second statement, he explained that he had entered into the real estate transactions "honestly and sincerely," and "did not know it was a scheme." Id. at 23. Grant denied preparing any false documents, and asserted that he was not a leader of the conspiracy. Id. at 23-24.

The district court found that Grant had a guideline range of 78 to 97 months of imprisonment. Id. at 18. Addressing the § 3553(a) factors, the court noted that Grant's medical problems were not unusual for a person of his age, and that he would receive adequate medical treatment from the Bureau of Prisons. Id. at 18-19. The court also concluded that Grant was not similarly situated to the co-conspirators who had received relatively lenient sentences. Id. at 19. The court stated that Grant "played a key role in this case, a role equal to that of Yvette Scott Patterson." Id. The court also observed that Grant's co-conspirators had accepted responsibility by pleading guilty, whereas "Mr. Grant to this day still doesn't

accept responsibility for his criminal acts." Id. In addition, the court noted that "some of the straw buyers in this case were vulnerable people [who] had placed trust in Mr. Grant because of his position in the church, and [ ] he took advantage of that." Id. The court stated that a longer sentence was appropriate based on the seriousness of Grant's offense:

> I think that this is a serious crime. I think that crimes like this all over the country, particularly in Florida, fuel the real estate market going crazy, and when that market crashed it had a terrible effect on not only Florida's economy, not only the American economy, but the whole worldwide economy.

Id. at 20. The court also asserted that a longer sentence was needed in order to promote respect for the law, deter others from committing similar offenses, and protect the public from further crimes committed by Grant. Id. Accordingly, the court concluded that a sentence at the high end of the guideline range was appropriate. Id. The court sentenced Grant to a term of 60 months of imprisonment with respect to Count 1, and terms of 97 months of imprisonment on Counts 3, 10, 11, 14, 17, and 18, with all sentences to run concurrently. Id. at 21. Grant indicated that he did not have any legal objections to his sentence, "other than what I have stated in my sentencing memorandum." Id. at 23.

## II. DISCUSSION

On appeal, Grant makes four arguments. First, Grant argues that the district

court made unsupported factual findings concerning the connection between his mortgage fraud and the nationwide and global economic crisis. Second, Grant asserts that the district court clearly erred in finding that his role was equal to that of Yvette Scott Patterson, the ringleader of the conspiracy. Third, Grant alleges that the district court imposed a disproportionate sentence compared to other defendants in the case. Fourth, Grant argues that his sentence is substantively unreasonable based on the 18 U.S.C. § 3553(a) factors.

Generally, we review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard. United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009). In this case, Grant preserved a general objection to the reasonableness of his sentence, but he did not specifically object to the district court's findings regarding the global-financial crisis or his role in the offense. We review sentencing arguments raised for the first time on appeal for plain error. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (per curiam). Under the plain-error standard, the defendant must show (1) an error, (2) that is plain, and (3) that affects substantial rights. Id. When those three factors are met, we have discretion to correct an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). We have not addressed the

7

relationship between the plain-error standard and reasonableness review in a published opinion, however, we need not decide whether Grant's arguments should be reviewed for an abuse of discretion or for plain error because his sentence is procedurally reasonable under either standard.

In reviewing the reasonableness of a sentence, we must ensure, first, "that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007) (quotations marks and citation omitted). The district court may base its factual findings on "evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).

"The doctrine of invited error is implicated when a party induces or invites the district court into making an error." United States v. Silvestri, 409 F.3d 1311,

1327 (11th Cir. 2005) (quotation marks and citation omitted). A party who invites an error may not subsequently challenge that error on appeal. Id.

In this case, Grant argued during his resentencing proceedings that banks and lending institutions had facilitated the conspirators' mortgage fraud by failing to adequately review mortgage applications. He requested that the court "consider a sentence that incorporates the full gamut of what transpired in this crisis involving many people and many institutions." R14 at 8. Because Grant stated that the court should consider his offense in the context of the overall economic crisis, his argument that the district court's findings concerning the link between mortgage fraud and the global-economic crisis were not supported by the record is precluded by the invited-error doctrine. See Silvestri, 409 F.3d at 1327.

With respect to Grant's role in the offense, our previous opinion affirmed the district court's imposition of a four-level enhancement for being a leader or organizer. See Grant, 320 Fed. Appx. at 908. Given our previous finding, the district court did not clearly err in finding that Grant played a key role in the conspiracy during the resentencing. See United States v. Stinson, 97 F.3d 466, 469 (11th Cir. 1996) (per curiam) (noting that, "[u]nder the law of the case doctrine, both the district court and the court of appeals are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case"

9

unless certain exceptions apply).

Having determined that the district court followed the proper procedures in sentencing Grant, we now consider whether his sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors. Gall, 552 U.S. at 51, 128 S. Ct. at 597. These factors include, among other things: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (4) the need for deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to avoid unwarranted sentencing disparities; and (7) the defendant's advisory guideline range. See 18 U.S.C. § 3553(a). We have explained that sentencing disparities between codefendants are not unwarranted where the codefendants are not similarly situated. See United States v. Williams, 526 F.3d 1312, 1323 (11th Cir. 2008) (per curiam) (holding that the defendant's sentence was reasonable, even though a codefendant received a substantially shorter sentence, because the codefendant pled guilty and provided substantial assistance to the government); United States v. Thomas, 446 F.3d 1348, 1356-57 (11th Cir. 2006) (holding that the defendant's 121-month sentence was reasonable, even though his codefendants had received sentences ranging from 41 to 53 months, because the defendant had

10

coordinated the offense).

"[T]here is a range of reasonable sentences from which the district court may choose." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). We ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable, id., and "will defer to the district court's judgment regarding the weight to be given to the § 3553(a) factors unless the district court has made a clear error of judgment." United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam) (quotation marks and citation omitted), cert. denied, 129 S. Ct. 2848 (2009).

In this case, Grant personally arranged for the fraudulent purchase of nine homes worth approximately $2.5 million. A longer sentence was justified based upon the nature and circumstances of Grant's offense, as well as the need for the sentence to reflect the seriousness of the offense and provide just punishment. Because Grant continued to deny responsibility for his offenses, a longer sentence was needed in order to promote respect for the law and protect the public from further crimes committed by Grant. In addition, Grant's 97-month sentence promoted the goal of deterrence by discouraging others from committing similar crimes. Further, Grant's sentences were within his advisory guideline range. See Talley, 431 F.3d at 788.

Although Grant's sentence is lengthier than the sentences given to his codefendants, all of Grant's codefendants accepted responsibility for their offenses by pleading guilty. In addition, the district court found that Grant played a greater role in the conspiracy than all of his codefendants, with the exception of Yvette Scott Peterson. Because Grant was not similarly situated to his codefendants, the disparities between his sentences and those received by his codefendants were not unwarranted. See Williams, 526 F.3d at 1323; Thomas, 446 F.3d at 1357. Finally, although the record reflects that Grant suffers from diabetes and other ailments, the district court did not clearly err in finding that Grant's health situation was not unusual for a person of his age and that he would receive adequate medical treatment from the Bureau of Prisons. See Gonzalez, 550 F.3d at 1324. Thus, the court was not required to impose a shorter sentence based upon Grant's medical condition.

### III. CONCLUSION

Grant appeals his sentence arguing that the district court based the sentence on clearly erroneous factual findings and that his sentence is substantively unreasonable. As we have explained, there were no procedural errors in Grant's resentencing, and Grant's 97-month sentence is substantivally reasonable. Accordingly, the sentence imposed by the district court is **AFFIRMED**.