[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14550
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00018-BAE-GRS-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC KENNARD CRUMP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 25, 2014)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty, Eric Crump appeals his total 77-month sentence for two counts of using a communication facility, a telephone, to facilitate a drug transaction, in violation of 21 U.S.C. § 843(b).  On appeal, Crump argues that his 77-month sentence, which is twenty months above the advisory guidelines range of 46 to 57 months, is both procedurally and substantively unreasonable.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

Drug Enforcement Administration ("DEA") Task Force agents began investigating an extensive drug-trafficking organization operating throughout Southeast Georgia and headed by Tellas Kennedy.  Agents obtained authorized wiretaps of telephones used by organization members, including Kennedy.  Through the wiretaps, surveillance, and controlled buys, agents identified over thirty people involved in the drug conspiracy, including Defendant Crump.

Defendant Crump was identified based on Crump's three intercepted phone calls with Kennedy in August and September 2011.  At the time, Crump was incarcerated at the Coffee Correctional Facility for a state parole revocation.

In 1991, Defendant Crump was convicted for a third time of the Georgia offense of sale of cocaine and was sentenced to life with possibility of parole.  In April 2003, Crump was paroled, but, in December 2008, his parole was revoked

2

after he was charged with new felony drug offenses in state court. Although in 2010 Crump was acquitted of the new state drug charges, the Georgia State Parole Board maintained the parole revocation based on a preponderance of the evidence. While incarcerated on the state parole revocation, Defendant Crump met Manuel Longoria, who reportedly had connections to a Mexican drug cartel. Defendant Crump called Kennedy to discuss Longoria supplying Kennedy with controlled substances.

In the first intercepted call on August 18, 2011, Kennedy told Defendant Crump that he was on his way to meet Longoria. Defendant Crump told Kennedy that Longoria was "as good as gold" and to get Longoria a phone. Defendant Crump and Kennedy also talked about when they used to sell drugs. Kennedy then stated that he had arrived to meet Longoria and would call Crump back later.

In the second intercepted call on August 29, 2011, Kennedy called Defendant Crump and said he was trying to meet with Longoria at a hotel. During the call, Kennedy and Defendant Crump discussed how, with Longoria involved, they would distribute greater quantities of drugs. In the third intercepted call on September 2, 2011, Kennedy again called Defendant Crump. Using code words, Kennedy and Crump discussed the cost of different drug quantities.

In a subsequent interview with investigators, Longoria described the meeting with Kennedy at a hotel where Longoria worked. Kennedy told Longoria that

3

Defendant Crump had sent him. Kennedy wanted Longoria's help obtaining .25- to .5-kilogram quantities of cocaine powder. Longoria told Kennedy he would make some calls and get back to him. No drugs were ever distributed as a result of Defendant Crump's arranging the connection between Kennedy and Longoria.

However, during an interview with another member of the same drug conspiracy, Jeffery Jackson, investigators learned that Defendant Crump had sold drugs to Jackson in either 2007 or 2008, while Crump was out on state parole.

A federal grand jury indicted Defendant Crump and 29 other codefendants, including Kennedy, Longoria, and Jackson, in a multi-count indictment for their involvement in the drug trafficking organization. Defendant Crump was charged with conspiracy to possess with intent to distribute controlled substances between March 2006 and November 2012, Count 1, and with three counts of using a communication facility to facilitate the drug conspiracy, namely the three intercepted phone calls with Kennedy on August 18 and 29 and September 2, 2011, Counts 81, 113 and 120, respectively.

## B.    Guilty Plea

Pursuant to a written plea agreement, Defendant Crump agreed to plead guilty to Counts 81 and 113, and the government agreed to dismiss Counts 1 and 120. The government agreed not to object to the probation officer's recommendation that Defendant Crump receive a two-level reduction for

4

acceptance of responsibility and to move for an additional one-level reduction, if applicable.

At the plea hearing, the district court initially expressed reluctance to accept Defendant Crump's guilty plea because Crump's sentences on Counts 81 and 113 would be inadequate to deter Crump given his history of drug dealing and his involvement in the drug conspiracy. After defense counsel explained the facts of Crump's involvement, the district court stated that "this must be one of those honest cases where [21 U.S.C. § 843(b)] is the crime," and that "with that proffer, [the court] might proceed."

The government called DEA Task Force Agent Kevin Waters to explain the factual basis for the plea. Agent Waters testified to the interception of Defendant Crump's prison phone calls with Kennedy in which Defendant Crump discussed possible drug transactions between Longoria and Kennedy. After Agent Waters' testimony, Defendant Crump agreed that he was in jail when he made the calls to set up the drug transactions. Based upon those facts, the district court accepted Defendant Crump's guilty plea.

At the conclusion of the hearing, the district court stated that while it had accepted the guilty plea, it was "not necessarily accepting the plea agreement." However, the district court subsequently entered an order finding Defendant Crump guilty and ratifying and confirming the plea agreement.

5

## C.    Presentence Investigation Report

The probation officer, Paul Skarupa, prepared a presentence investigation report ("PSI") recounting the facts above.  The initial PSI used the drug quantity codefendant Jackson told Agent Waters he obtained from Defendant Crump.  Specifically, Jackson said he had met Defendant Crump on the side of a highway and purchased five cookies of crack cocaine.  Using the drug amount reported to Agent Waters, the initial PSI calculated a base offense level of 28.

After Defendant Crump filed a written objection to the drug quantity, Officer Skarupa interviewed codefendant Jackson about the amount of drugs he obtained from Defendant Crump.  Officer Skarupa revised the PSI using this new drug amount.[1]  According to paragraph 9 of the revised PSI, during Officer Skarupa's interview, codefendant Jackson said that Defendant Crump supplied one of Jackson's friends with crack cocaine, but Jackson could not provide drug quantities for these transactions because he was not present when they occurred.  In addition, Jackson said that, on one occasion in 2008, he bought 2 to 3 ounces of powder cocaine from Defendant Crump.  Jackson arranged the transaction over the telephone and then drove to Defendant Crump's residence to purchase the drugs.

---

[1]Neither the initial PSI nor Defendant Crump's written objections to it are in the record. The addendum to the revised PSI states that Defendant Crump filed three objections to the initial PSI but withdrew them after a "resolution conference."

6

In paragraph 10, the revised PSI attributed to Crump 2 ounces (or 56.7 grams) of powder cocaine, explaining that "[t]his figure represents a minimum quantity of cocaine hydrochloride Crump sold Jackson." The revised PSI further noted that the 56.7-gram quantity was "conservative" because it did not include the drug amounts referred to in the intercepted phone conversations between Defendant Crump and codefendant Kennedy or the quantities of crack cocaine codefendant Jackson said Defendant Crump had sold to Jackson's friend.

Using 56.7 grams of powder cocaine, the revised PSI calculated a base offense level of 16, pursuant to U.S.S.G. § 2D1.1(c)(12). Based on his criminal history, Crump qualified as a career offender. However, because Crump's offense level of 12 under the career offender provision, § 4B1.1(b)(7), was less than his offense level of 16 under § 2D1.1(c)(12), his offense level remained 16.

The PSI recommended that Defendant Crump not receive a reduction for acceptance of responsibility. The PSI indicated that, in an interview with the probation officer, Defendant Crump admitted his conduct regarding the intercepted calls with Kennedy, but denied any drug transaction with Jackson. The PSI further stated that Jackson had established himself as a credible witness during the trials of two codefendants.

With a total offense level of 16 and a criminal history category of VI (as a career offender), the PSI recommended an advisory guidelines range of 46 to 57

7

months' imprisonment.  The PSI noted that the statutory maximum for each count was four years.  See 21 U.S.C. § 843(b), (d)(1).

## D.    Sentencing Hearing

At the sentencing hearing, the district court confirmed that there were no objections to the PSI's fact findings, except Defendant Crump's objection to the factual statements in paragraphs 9 and 10 as to drug quantity.  The district court then adopted the undisputed fact findings.

Defendant Crump argued that, given that Jackson had changed his story and was unreliable, the government did not prove the drug amount by a preponderance of the evidence and it was improper to withdraw the reduction for acceptance of responsibility based on Crump's claim that he had not sold any drugs to Jackson.

The government called Jackson to support the PSI's drug quantity finding and the related denial of acceptance of responsibility.  Jackson testified, inter alia, that: (1) twice in 2007 Defendant Crump sold at least 3.5 grams of crack cocaine to Jackson's friend, but Jackson did not personally see the exchange of drugs, which occurred in a car; (2) on a couple of occasions in 2008, Jackson bought five ounces of crack cocaine from Defendant Crump on the side of the road; and (3) later in 2008, Jackson once went to Defendant Crump's house and bought two ounces of "half-and-half," or half crack and half powder cocaine.  Jackson explained that he had told Agent Waters only about the roadside purchase of crack because that was

8

all Agent Waters asked him about.  Jackson denied that his testimony was inconsistent with what he had told Officer Skarupa during the interview, insisting that he had told Officer Skarupa that he had purchased 2 ounces of "half-and-half" at Defendant Crump's home.

Jackson also stated that, while incarcerated together, Defendant Crump asked Jackson why he had given authorities information about Crump.  When they were no longer incarcerated together, Defendant Crump sent Jackson a letter asking about the drugs quantity alleged in Jackson's PSI and later asked Jackson whether he had received the letter.  Jackson said that he heard "through someone else" that other codefendants wanted to know what he was going to tell the government and whether he would write a letter for Kennedy.

After Jackson's testimony, the government argued that Defendant Crump should be held accountable for the additional drug amounts Jackson testified about, which would result in a base offense level of 28, rather than 16.  The district court asked Officer Skarupa's supervisor, Marty Bragg, to explain the drug quantity calculation.[2]  Officer Bragg stated that the PSI had been revised from a base offense level of 28 to 16 after Jackson was interviewed.  Officer Bragg said that the revised PSI drug quantity was "extremely conservative" and did not include the

---

[2]Officer Skarupa was not at the sentencing hearing.  As Officer Skarupa's supervisor, Officer Bragg reviewed and signed the PSI and stood in for Officer Skarupa at the sentencing hearing.

.25- and .5-kilogram amounts of powder cocaine Crump discussed in the calls with Kennedy.

After a short recess, the government called another probation officer, Arron Miller, who was present when Officer Skarupa interviewed Jackson. Officer Miller testified that during the interview, Jackson said that he had bought a combination of crack and powder cocaine, or half-and-half, from Defendant Crump. Jackson also had discussed other cocaine purchases that occurred years earlier, but Officer Miller could not remember the amounts. Officer Miller pointed out that this was the second time Jackson had changed the drug quantity in favor of one of his codefendants after his interview with Agent Waters.

The district court found that there had "been efforts made by different defendants to intimidate the witness, Jackson, and he has given inconsistent, if not contradictory statements." The court agreed with Officer Miller's observation that "the more the attempts were made by others, that [Jackson's] statements became more favorable, and one can also assume that's because of a feeling of intimidation."

The district court adopted the factual statements in paragraph 9 and 10 of the revised PSI, including the drug quantity. The district court also stated that "[q]uestions of guideline application have arisen with respect to" whether Defendant Crump was entitled to an acceptance of responsibility reduction. The

court concluded that it had seen nothing to convince it that the probation officers had not "done as good a job as they could have with the transient nature of people trying to gain advantages." The district court found a total offense level of 16, a criminal history category of VI, and an advisory guidelines range of 46 to 57 months.

Defendant Crump personally apologized, admitting to the court that he was guilty of trying to arrange the drug transactions from prison. Crump maintained, however, that Jackson was lying about buying drugs from him because Crump was working a legitimate job as a bread truck driver at the time Jackson claimed the drug transaction took place. Defense counsel argued that Jackson's testimony was "contradictory and questionable" and asked the district court to reconsider its drug quantity ruling and restore the acceptance of responsibility reduction or, alternatively, to take into account that Defendant Crump had accepted responsibility for the charged conduct in selecting the sentence.[3]

The government argued that Jackson was credible despite his inconsistencies. The government noted that Jackson's story changed after Crump's unlawful contact and that informant intimidation had occurred in other

---

[3]At this point, the district court asked defense counsel whether Crump was asking to withdraw his guilty plea because it was coerced. Defense counsel stated that Crump was not claiming that his guilty plea was coerced and did not want to withdraw his plea. Defense counsel explained that Crump was arguing only that it was unfair to use the 56.7 grams of powder cocaine to calculate the base offense level given that Jackson's statements were inconsistent and Crump denied that the transaction with Jackson ever took place.

11

codefendant's cases.  The government argued that the district court's drug quantity finding was "exceptionally generous" to Defendant Crump.  The government opposed an acceptance of responsibility reduction because Defendant Crump continued to deny selling drugs to Jackson and also had unlawful contact with witnesses and codefendants.

The district court stated that it had considered the entire record and the 18 U.S.C. § 3553(a) factors and sentenced Crump to 48 months for Count 81 and 29 months for Count 113, to be served consecutively, for a total of 77 months in prison.  The total 77-month sentence was also to be served consecutively to Crump's state sentence imposed upon his parole revocation for his 1991 sale of cocaine conviction.

In varying upward from the advisory guidelines range, the district court noted the nature and circumstances of Crump's offenses and Crump's history and characteristics.  In explaining the chosen sentence, the district court stressed in particular that: (1) Crump committed the offenses while in jail; (2) while "in prison for this offense, . . . he sought to impose some coercion on the witness that wants to cooperate"; (3) Crump, who was 43 years old, already had three prior felony convictions for the sale of cocaine, and had spent much of the last twenty years incarcerated; (4) neither Crump's state life sentence nor his well-paying job as a bread truck driver once he was paroled deterred him from committing further

crimes; (5) Crump's qualification as a career offender had no impact on his offense level calculation because he pled guilty to only the communication facility counts and not the larger drug conspiracy; (6) Crump "benefitted immensely" from his plea deal and "the amount of cocaine has been ultraconservative"; and (7) a preponderance of the evidence established that Crump "continues to minimize and deny criminal conduct."

## II.  DISCUSSION

"We review the reasonableness of a sentence for abuse of discretion using a two-step process."  United States v. Turner, 626 F.3d 566, 573 (11th Cir. 2010). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chose sentence. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances and in light of the § 3553(a) factors.  Id.

### A.    Procedural Reasonableness

Defendant Crump raises several procedural errors, none of which have merit.  First, although he complains about Jackson's reliability, Crump has given us no reason to disturb the district court's implicit credibility finding as to

13

Jackson's drug quantity testimony. See United States v. Pham, 463 F.3d 1239, 1244 (11th Cir. 2006) (explaining that we give substantial deference to a sentencing court's credibility findings and will not question them absent some evidence to the contrary). The district court found that codefendant Jackson's testimony that he had bought drugs from Defendant Crump was credible despite his inconsistency as to the amount of drugs involved. Then, following the probation officer's recommendation, the district court used the most conservative drug quantity supported by Jackson's testimony to calculate Crump's advisory guidelines range.[4]

Second, there is no merit to Defendant Crump's claim that the district court varied upward "to avoid addressing the issue of the sentencing points altogether." A district court cannot avoid a guidelines calculation issue merely by varying upward because the district court must first correctly calculate the guidelines range before deciding on the appropriate sentence. United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005); see also Fed. R. Crim. P. 32(i)(3)(B) (requiring the sentencing court to rule on disputed portions of the PSI that will affect the sentence). Here, the district court directly addressed and overruled Defendant

---

[4]On appeal, Crump challenges only the district court's credibility finding and not the district court's calculation of the guidelines range of 46 to 57 months. Accordingly, any guidelines calculation issues are abandoned. See United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004) (explaining that we do not consider issues not raised in the appeal brief).

14

Crump's objection to the drug quantity in paragraphs 9 and 10 of the revised PSI and adopted the revised PSI's fact findings and guidelines calculations.

Finally, we reject Defendant Crump's argument that the district court demonstrated any bias against him or had a "preconceived notion of sentencing."[5] Crump does not point to any remarks by the district court at the sentencing hearing suggesting that it had pre-judged the evidence or was impartial. The district court conducted a full evidentiary hearing on the issue of drug quantity before making a drug quantity finding and heard argument from the parties and allocution from Crump before choosing a sentence. Crump points to the district court's initial reluctance to accept Crump's guilty plea and the court's statement that it accepted the guilty plea but not necessarily the plea agreement. However, the district court ultimately accepted both Crump's guilty plea and his plea agreement. The court's statements at the plea hearing do not evince any bias.

Nor is there any evidence whatsoever in the record to support Defendant Crump's claim that the district court credited Jackson's testimony to preserve the government's cases against other codefendants in the conspiracy. Indeed, the district court acknowledged that Jackson's hearing testimony was inconsistent with his prior statements as to drug quantity and conveniently cut in Crump's favor by

---

[5]Because Defendant Crump did not raise a claim of impartiality during sentencing or request that the district judge recuse himself, this claim is reviewed for plain error. See United States v. Rodriguez, 627 F.3d 1372, 1379-80 (11th Cir. 2010). For the reasons stated, Crump has not shown error, much less plain error.

15

lowering the drug quantity. Nonetheless, the district court used the extremely conservative drug quantity to calculate Crump's offense level.[6]

The mere fact that the district court varied upward after calculating the advisory guidelines range does not show bias. See United States v. Berger, 375 F.3d 1223, 1227-28 (11th Cir. 2004) (explaining that an adverse ruling alone does not provide a basis for concluding that the court's impartiality is in doubt). This is especially true here, where the district court gave a reasoned basis for its decision to vary upward. Under the circumstances, we see no indication of bias against Crump or that Crump was deprived of a fair sentencing hearing.

## B.    Substantive Reasonableness

Defendant Crump has not shown that his total 77-month sentence is substantively unreasonable.

In choosing a sentence, the district court must consider the § 3553(a) factors but is not required to address each factor separately on the record. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).[7] "The district court also considers the

---

[6]Had the district court fully discredited Jackson, as Defendant Crump claims the district court should have, the remaining undisputed drug quantity would have been the .25- to .5-kilogram amounts Crump discussed with Kennedy during his prison calls. Even conservatively estimated, this drug quantity would have resulted in a base offense level of 20. See U.S.S.G. § 2D1.1(c)(10) (providing for a base offense level of 20 for offenses involving at least 200 grams but less than 300 grams of powder cocaine). Assuming arguendo that Crump would have received the three-level reduction for acceptance of responsibility, his total offense level of 16 would have remained the same.

[7]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense,

16

§ 3553(a) factors as to each offense when determining whether imprisonment terms should be imposed concurrently or consecutively." Turner, 626 F.3d at 573; see also 18 U.S.C. § 3584(b). The weight to be accorded each factor is committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). The party challenging the sentence has the burden to show it is unreasonable. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

If a district court decides to impose an upward variance, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)). In reviewing the reasonableness of a sentence outside the advisory guidelines range, we take into account the district court's justification and the extent of the variance, but we do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable. Gall, 552 U.S. at 47, 128 S. Ct. at 594-95; United States v. Irey, 612 F.3d 1160, 1186-87 (11th Cir. 2010) (en banc). We give "due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." Irey,

---

to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

17

612 F.3d at 1187 (quoting Gall, 552 U.S. at 51, 128 S. Ct. at 597).  We will vacate such a sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation marks omitted).

Here, the district court's reasons for the twenty-month upward variance were sufficiently compelling to justify the extent of the variance.  As the district court explained, Crump already had three prior felony convictions for sale of cocaine.  Crump had received a state life sentence and served over a decade in prison for his last sale of cocaine conviction.  Yet, Crump was not deterred from committing more drug crimes by either his prior incarceration or his well-paying job once he was paroled.  In fact, Crump committed the instant offense from jail while serving time for his state parole revocation.  After Crump pled guilty, he sought to influence Jackson's testimony as to the drug quantity that should be attributed to Crump and continued to deny selling drugs to Jackson.  Finally, the advisory guidelines range was based on an "ultraconservative" estimate of the amount of drugs attributable to Crump.

Although the total sentence was twenty months above the advisory guidelines range of 46 to 57 months, it was well below the total statutory

18

maximum Crump faced of eight years (or 96 months) for both counts.  Under the totality of the circumstances, we cannot say the district court's decision to impose a 77-month total sentence is substantively unreasonable.

**AFFIRMED.**